6682

POPE v. PATTERSON.

LIMITATION OF ESTATES—DEED—LIMITATION OF ACTIONS—PRESUMPTIONS—
MARRIED WOMEN.—A conveyance of land to a trustee in fee simple
to collect the rents and profits during life of grantor and pay to him,
and after his death to be divided between grantor's children, with
power in trustee to make deed to whomsoever he may be directed in
writing by grantor if he should desire to sell it, carries the legal
title to the trustee, the remainder does not vest in the children, but is
contingent, and sale by trustee during life of grantor, after lapse
of twenty years, will be presumed to have been made under written
direction of grantor, and his title is good against the remaindermen.
The statute of limitations began to run against trustee upon execu-
tion of the deed, and married woman, remainderman, is barred by
statutory period, notwithstanding coverture.

Before J. E. McDONALD, special Judge, Barnwell, October, 1906. Affirmed.

Action by M. L. Pope *et al.* against E. L. Patterson.

The trust deed involved is:

"The State of South Carolina, Barnwell District.

"Know all men by these presents, that I, Hansford D. Duncan, of the said State and district, for and in considera-

tion of the natural love and affection which I bear towards my children, H. A. Duncan, Harriett Eliza Twiggs, widow of the late George W. L. Twiggs, deceased, Sarah E. Eaves, wife of Dr. Paul F. Eaves, Mary Lucia Sams, wife of the Rev. Marion W. Sams, and my grandson, Darling P. Duncan, and also the sum of one hundred dollars to me in hand paid, have bargained, sold and released, and by these presents do give, grant, bargain, sell and release unto the said H. A. Duncan, all that tract of land situate, lying and being in the said district on the lower three runs, containing fifteen hundred acres, on which I formerly resided, and known as the Sandy Run Place.

"Also my two lots in the village of Barnwell, on which I now live, containing ten and eleven acres. To have and to hold all and singular the above described premises, together with the rights, members and appurtenances thereto belonging unto the said H. A. Duncan, his heirs and assigns, forever. And I, the said H. D. Duncan, do hereby warrant and forever defend the said premises unto the said H. A. Duncan against me, heirs, executors and administrators, and all other persons claiming or to claim through me.

"In trust, nevertheless, that the rents and profits of the said land are to be paid over to the said H. D. Duncan for and during his natural life, and the use of the said residence in Barnwell village for the same time. And after the death of the said W. H. Duncan, then the whole estate herein conveyed to be equally divided, share and share alike, among my children, H. A. Duncan, H. E. Twiggs, S. A. Eaves, M. L. Sams, and my grandson, D. P. Duncan.

"The share of my daughter, M. L. Sams, to her sole and separate use during life, and after her death to be equally divided among her children who may be living at the time of her death, the share of a deceased child, should the child so dying leave a child or children alive, to be equally divided among the children of said deceased child. The share of my grandson, D. P. Duncan, for the sole and separate use of his wife, Rosa, during her life, and after her death to be

equally divided among the children of the said D. P. Duncan who may be living at the time of his death, the share of a deceased child, should the child so dying leave a child or children alive, to be equally divided among the said children of said deceased child.

"The shares of my children, H. A. Duncan, H. E. Twiggs, S. E. Eaves, to vest absolutely upon the falling in of the life estate of myself. And on further trust that should the said H. D. Duncan desire to sell the whole or any part of the above described property, the said H. A. Duncan shall execute such titles of the same to such persons as he, the said H. D. Duncan, shall direct, in writing, without the necessity of applying to any court for that purpose.

"In witness whereof I have hereunto set my hand and seal this, the 13th day of April, A. D. 1868. H. D. Duncan (L. S.) In the presence of W. W. Woodward, B. B. Sams."

The Circuit decree is:

"From the agreed statement of facts, it appears that all of the plaintiffs, except Rosa Aldrich and A. P. Aldrich, are children of Mrs. Lucia Sams and her husband, Marion Sams. Mrs. Lucia Sams was the daughter of the grantor, H. D. Duncan, mentioned as L. M. Sams in the above deed. H. D. Duncan, the grantor in the above deed, died in the year 1881, and the trustee, H. A. Duncan, died in the year 1882. Mrs. Sams died on the 6th of November, 1902, her husband, Marion Sams, having predeceased her on the 2d of August, 1899.

"The plaintiffs, Rosa Aldrich and A. P. Aldrich, are the wife and child of D. P. Duncan, the grandson of H. D. Duncan, mentioned in said deed. D. P. Duncan died on the 31st of March, 1894, leaving him surviving, as his heirs at law, his wife, the plaintiff, Rosa Aldrich, and an only child, the plaintiff, A. P. Aldrich. D. P. Duncan and Rosa Duncan were husband and wife at the time of the execution of the above trust deed.

"On the 30th day of August, 1870, H. A. Duncan, as trustee, conveyed to H. D. D. Twiggs the property in dispute, and on the same day, in pursuance of a sale for delinquent taxes, a deed was also executed and delivered to the said H. D. D. Twiggs by the Sinking Fund Commission conveying the property in dispute, the same having been sold for delinquent taxes in the name of H. A. Duncan.

"On the 18th day of February, 1880, H. D. D. Twiggs conveyed the property in dispute to H. F. Snelling. Thereafter, on the 18th of April, 1893, H. F. Snelling conveyed to Benjamin Graham eight hundred (800) acres of the land in dispute. On the .... day of ...... 18.., H. F. Snelling conveyed to the British and American Mortgage Company, limited, by way of mortgage, five hundred (500) acres of the land in dispute. Subsequently the said mortgage was foreclosed and the land sold. The British and American Mortgage Company, limited, became the purchaser thereof and took deed thereto bearing date the 12th day of November, 1897.

"The British and American Mortgage Company, limited, on the 19th of November, 1897, conveyed to the defendant, E. L. Patterson, said 500 acres of land, being part of the land in dispute, and on the 14th day of June, 1903, Benjamin Graham conveyed to the defendant, E. L. Patterson, 800 acres, being part of the land in dispute. All of the above deeds were duly placed on record in the office of the registrar of mesne conveyance for Barnwell County, and the respective and successive owners of said land paid the State and county taxes thereon after the date of the sale for taxes in the year 1879. The defendant claims title by virtue of above deeds and possession thereunder.

"It is admitted in the agreed statement of facts that 'the successive owners of the land in dispute held the same openly, notoriously, exclusively and adversely against all persons whomsoever, but this admission is without prejudice to the right of the plaintiffs to contend that such possession was not adverse as to them, it being contended that as to

22—78

Mrs. Lucia Sams, she being a married woman, and under
the disability of coverture at the time of the execution of
the above trust deed, the possession of the several successive
owners could not be adverse to her. This action was com-
menced on the 24th day of February, 1904. These are the
salient facts upon which the issues in this case arise.

"It is contended by the plaintiffs that under the above deed
from H. D. Duncan to H. A. Duncan, trustee, the bene-
ficiaries mentioned therein took vested remainders at the
time of the execution of said deed, the enjoyment thereof,
however, being postponed until the falling in of the life
estate reserved in said deed to the grantor, H. D. Duncan.
They contend further that the trustee, H. A. Duncan, did
not hold the legal title in trust for the remaindermen, but
that his office as such trustee terminated with the death of
H. D. Duncan, the grantor and life tenant. In other words,
it is the contention of the plaintiffs that the statute of uses
executed the use and vested the legal title in the remainder-
men immediately upon the execution of the trust deed, and
that the reservation or power of sale contained in the trust
deed is null and void, as being repugnant to the estate
granted. This, in brief, is the main contention on behalf of
the plaintiffs. They, of course, contend further that the tax
deed above mentioned is void as against them, for non-com-
pliance with statutory requirements, and they also contend
that there could be no adverse possession as to them under
the facts above stated.

"On the other hand, the main contention of the defendant
is that, under this trust deed, the legal title vested and
remained in the trustee; that his conveyance was a valid
execution of the power of sale under the terms of the trust
deed, and that the defendant, his predecessors and grantors
having held adversely for more than twenty years, will be
presumed to have acquired title to the land in dispute by a
grant from the State. He also contends that as the legal
title remained in the trustee, the statute of limitations began
to run against him upon his conveyance to H. D. D. Twiggs,

and that not only the trustee, but the *cestui que trustent,* would be barred at the end of the statutory period. The defendant also relies upon adverse possession under tax title.

"From the view that I take of the facts in this case, it will not be necessary to pass upon every issue that has been raised between the plaintiffs and defendant. It is evident that the pivotal point in the case depends upon the construction of the trust deed above set forth.

"If the plaintiffs' contention that the legal title in remainder vested in the *cestui que trustent* at the time of the execution of the trust deed under the operation of the statute of uses be sustained, then it is manifest that plaintiffs are entitled to the relief demanded in their complaint, unless their rights are otherwise barred by the presumption of a grant, lapse of time, adverse possession, or by the tax title offered in evidence by the defendant.

"If, however, the legal title did not so vest in the *cestui que trustent,* then it is equally evident that the conveyance by the trustee, in the absence of fraud, would bar any supposed rights that the plaintiffs might claim in the premises. The solution of these questions, as has been stated, depends upon the proper construction of the trust deed.

"The object of construction of all contracts by the courts is to ascertain the intention of the parties, and when so ascertained, nothing remains but to effectuate that intention, if it can be done according to law. It is not for the courts to make contracts by construction, but it is their duty to carry out the expressed intention of the parties if it can be done consistently with sound and settled legal principles. As is said in 2 Devlin on Deeds, section 836: 'As in the case of all contracts, the intention of the parties to the deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law.' Again, in same section, it is said: 'If a question of law arises upon the construction of a deed, it is the province of the court to construe it and to decide from the language what the intention of the party was. When the intention of the parties can be

plainly ascertained, arbitrary rules are not to be resorted to. The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention, if practicable, when not contrary to law.'

"Again, in section 837, quoting the language of Chief Justice Kent, in *Jackson* v. *Myers,* 3 Johns, 388, 395, it is said: 'The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect.' And if a deed cannot take effect in the precise way intended, yet if it can operate in another mode, it will be so construed.

"In note 3, on page 106, same volume, will be found a quotation from the opinion of Mr. Chief Justice Ruger, in *Coleman* v. *Beach,* 97 N. Y., 545, 553, which states the rule very clearly as follows: 'If the disposition which the owner of property desires to make does not contravene any positive prohibition of law, his control over it is unlimited, and the only office which the courts are called upon to perform in construing his transfers of title, is to discover and give effect to his intentions. In the case of repugnant dispositions of the same property contained in the same instrument, the courts are of necessity compelled to choose between them; but it is only when they are irreconcilably repugnant that such a disposition of the question is required to be made. If it is the clear intent of the grantor that apparently inconsistent provisions shall all stand, such limitations upon and interpretations of the literal signification of the language used must be imposed as will give some effect, if possible, to all of the provisions of the deed.'

"The well settled rule of construction, adopted by our own courts, is in harmony with the above statement of the law. In *McCown* v. *King,* 23 S. C., 235, the rule is stated in the following language: 'The object of construction as to deeds

—in fact, as to all papers in contest before the courts—is to reach the intention of the parties, because it is this which must control, otherwise the contract would be the contract of the court and not of the parties. The ascertainment, however, of this intention is not to be had by conjecture or by what seems to be natural justice, or what the court would have done under the circumstances, but it must be had by the application of the rules of construction laid down in the books, and which the wisdom of the past has established as the best means of reaching the true meaning and intent of such papers. Whatever the application of these rules evolves, nothing more, nothing less, must be regarded and declared to be the intent of the matter under construction, whether it be in consonance with our notions of what it ought to be or not.'

"See, also, *Mellichamp* v. *Mellichamp*, 28 S. C., 129, 5 S E., 333; *Fuller* v. *Missroon*, 35 S. C., 327, 14 S. E., 714; *Brown* v. *McCall*, 44 S. C., 511, 22 S. E., 823; *Foster* v. *Glover*, 46 S. C., 522, 22 S. E., 823; *Faber* v. *Police*, 10 S. C., 386.

"Applying these principles of construction to the deed in question here, I do not think it can be seriously doubted that it was the intention of H. D. Duncan that the legal title to the tract of land in question should not vest in the beneficiaries at the time of the execution of the deed. On the contrary, I think it was his clear intention to vest the legal title in the trustee, there to remain until divested upon the happening of certain contingencies, to wit: a sale at his request, or his dying without exercising the power to direct a sale. It was certainly not his intention, in my opinion, that the legal estate should be vested in his children under the statute of uses. The following facts and circumstances, in my opinion, strongly support this view:

"(1) The grantor uses apt and technical words to convey the entire fee to the trustee, and he even inserts the warranty clause before the language declaring the trust. (2) The rents and profits are reserved, and 'are to be paid

over' to the grantor for and during his natural life. (3) The estate conveyed is not to be divided among his children until after the death of the said grantor. (4) After directing a division, he provided that the share of Mrs. Sams should be for her sole and separate use during her life only, with remainder to her children living at the time of her death, etc., and the share of his grandson, D. P. Duncan, is limited to the sole and separate use of the wife of D. P. Duncan during her life, with remainder to his children living at the time of her death, etc. (5) The shares of the other children are not 'to vest absolutely' until the falling in of the life estate. (6) The trustee is to hold the land upon the further trust, to sell the whole or any part thereof when so directed, in writing, by the grantor.

"If the contention of plaintiffs' counsel is correct, then no effect whatever can be given to that clause of the deed which provides a life estate for Mrs. Sams, and for the wife of his grandson, D. P. Duncan, nor can any force or effect be given to that clause of the deed in which the grantor provides for a sale by the trustee if he is so directed in writing. To so construe this deed would bring about a result manifestly contrary to the plain intention of the grantor. His intention must be carried out unless repugnant to some principle of law. It is contended that to give effect to that clause providing for a sale would violate the rule of law whereby the legal title becomes vested under the statute of uses when the trustee has no duties to perform.

"Does the statute of uses apply to this case? The rule on this subject is clearly stated in *Snelling* v. *Lamar*, 32 S. C., 75, 76, 10 S. E., 825, in the following language: 'It is well settled that where an estate in real property is conveyed to one for the use of or in trust for another, and no duty is imposed upon the trustee for the proper performance of which it is necessary that the legal estate should remain in the trustee, such estate, by the operation of the statute of uses, will pass at once to the *cestui que trust*, or person for whose uses the estate is conveyed; but when there is anything

for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him by the instrument creating the trust, then the statute will not execute the use, as it is termed, and the legal estate will remain in the trustee.    These principles have been so often determined that it cannot now be necessary to do more than refer to some of the cases in which they have been settled. *Ramsay* v. *March*, 2 McCord, 252; *Faber* v. *Police*, 10 S. C., 376; *Bristow* v. *McCall*, 16 *Id.*, 545; *Howard* v. *Henderson*, 18 *Id.*, 184; *Ayer* v. *Ritter*, 29 *Id.*, 135, 7 S. E., 35.

"The rule was also stated by Chancellor Harper, in *Posey* v. *Cook*, 1 Hill, 413, as follows: 'Perhaps the rule might be more accurately expressed to say that where the intention is that the estate shall not be executed in the *cestui que use*, and any object is to be effected by its remaining in the trustee, then it shall not be executed.'    See, also, *Farr* v. *Gilreath*, 23 S. C., 512; *Ayer* v. *Ritter*, 29 S. C., 136, 7 S. E., 35; *Wieters* v. *Timmons*, 24 S. C., 488; *Carrigan* v. *Drake*, 36 S. C., 365, 15 S. E., 339; *Brown* v. *McCall*, 44 S. C., 503, 22 S. E., 823; *Foster* v. *Glover*, 46 S. C., 522, 24 S. E., 370; *Holmes* v. *Pickett*, 51 S. C., 280, 29 S. E., 82; *Bank* v. *Garlington*, 54 S. C., 424, 32 S. E., 513.

"It was perfectly competent, in my opinion, for the grantor, by the deed here under consideration, to convey the property to the trustee for the purpose of selling the whole or any part thereof when he should be so directed in writing by the grantor.    Such a trust does not violate any rule of law.    In order that the trustee might convey the land it was certainly necessary that the legal title should remain in him for that purpose, and, hence, as he had this duty to perform with reference to the land, if he should be called upon to do so by the grantor, the statute of uses would not execute the use nor vest the legal title in the grantor's children.    I think the intention of the grantor was to retain the *jus disponendi*, so to speak, during his life, and his children were to take under this deed only in the event that he did not direct the

trustee to sell the land during his lifetime. I think this is made more evident when we consider the fact that the grantor provided in effect that the land should not be divided until after his death; by the further fact that he gives one of his daughters only a life estate in the property, and that the share provided for his grandson was limited to the use of his wife for life, and, finally, by the fact that as to the shares of the other children, he provides that they are not 'to vest absolutely' until the falling in of the life estate. In other words, as to the share of H. A. Duncan, S. A. Twiggs and S. E. Eaves, there was to be no absolute vesting of the estate until the termination of the grantor's life estate.

"In order to carry out the intention of the grantor, it is legally permissible to transpose the two clauses of the deed which declare the trust; and, if necessary, to effectuate the intention of the grantor, the clause in reference to the sale of the land may be placed first in the deed. *McCown* v. *King*, 23 S. C., 235, 236.

"In the deed construed in that case, the trust clause was separated from the granting clause, as is the case here, by the interposition of the warranty clause, and yet the court so transposed the different clauses as to carry out the manifest intention of the grantor. If this be done here, then the deed can be so construed as to effectuate the intention of the grantor, and every part of it can be given effect without violating any known principle of law.

"But even if it were not clearly permissible to so transpose the several clauses of this deed, in my opinion, the latter trust clause may be enforced and given effect without violating any sound legal principles.

"In the case of *Wieters* v. *Timmons,* 25 S. C., 488, a very similar provision was made in a trust deed, and the court held, at least by the clearest implication, that the power of sale therein given might have been exercised during the joint lives of the grantor and his wife.

"At page 495 of the report, it is said: 'During the life of the grantor he was to have control of the entire income

of the property to be used by him in the support and maintenance of his wife and children, and the education of said children, and it was not unreasonable that he should attach thereto the proviso in question permitting him and his wife to change the property, if found necessary, subject to be reinvested for the same purposes as expressed in the original deeds. Up to his death, the interest of the issue, other than support and maintenance, was contingent, and the proviso could in no way, therefore, effect them. Upon the death, however, of the grantor, the interest of the wife and the issue was separated by the terms of the deed, the wife being entitled to the use and benefit of one moiety for life, and the other moiety to go to the issue in fee. The grantor died without making any request jointly with his wife for the sale of the property, or any portion thereof, and for the reinvestment of the proceeds, and, therefore, it is no longer possible for such joint request to be made; and, although it is true the proviso empowered the survivor to make such request, yet it would be utterly inconsistent with the vested interest of the issue in the moiety to which they became entitled at the death of their father (the grantor) to suppose that this power extended to said interest.'

"The clear inference from this language is that a conveyance upon the joint request of the grantor and his wife would have been sustained by the court, and the interest of the issue would have been thereby barred. For these reasons, I am of the opinion, and so hold with reference to the deed here under consideration, that the statute of uses did not execute the use or vest the legal estate in the children of H. D. Duncan, the grantor.

"Having held that the legal title remained in the trustee, and that he had the right to convey upon the written request of the grantor, it only remains to consider what was the effect of his conveyance to H. D. D. Twiggs upon the contingent interest of the plaintiff. This deed was made by the trustee on the 30th day of August, 1879, and the written request of H. D. Duncan will now be presumed after the

lapse of twenty years. It is admitted that Twiggs, and those who succeeded in title under him up to the time of the commencement of this action, in February, 1904, were in open, notorious, exclusive and adverse possession of the land. It is contended, however, that owing to the fact that Mrs. Sams was a married woman, and under the disability of coverture, the possession could not be adverse as to her, and that the rights of the other tenants in common would thereby be preserved. There would be great force in this position if it were not for the fact that the legal title, as I have held, was in the trustee and not in Mrs. Sams, and the trustee having made a conveyance of the land, the statute of limitations began to run as against the legal title and in favor of those in possession at the time of such conveyance; and, notwithstanding the fact that Mrs. Sams was a married woman, I am unable to perceive how the running of the statute would be arrested in view of these facts.

"As to this point, in *Benbow* v. *Levi,* 50 S. C., 128, 27 S. E., 655 (a case where the legal title was in the trustee), it is said: 'If an executor, or an administrator, or committee of a lunatic, or a guardian of a tender infant has a chose in action properly in his hands belonging to the estate of his *cestui que trust,* and such personal representative allows time enough to elapse from maturity of the chose to bar a recovery thereon, and he brings an action thereon and fails to recover, his right of action is gone, and with his loss of such right so goes that of his *cestui que trust.* So as to land; if trustees who hold a legal title allow the statute of limitations to bar them, or a presumption of a grant to arise, the right of action for the land is barred and their *cestui que trustent* are barred also. *Trustees* v. *Jennings,* 40 S. C., 168, 18 S. E., 257.'

"Here on the 18th day of February, 1880, H. D. D. Twiggs, the grantee of the trustee, H. A. Duncan, conveyed the land in dispute to H. F. Snelling, who, it is admitted, was in possession for more than ten years under his conveyance. This gave him, as against the trustee and Twiggs,

at least a title by adverse possession under the statute of limitations, and such title was subsequently acquired by the defendant.

"This being my view of the law applicable to the facts in the case. I do not regard it material to decide what effect, if any, should be given to the tax title set up by the defendant herein. I may say, however, that owing to the absence of proof as to statutory requirements having been complied with, I am doubtful whether the plaintiffs would be barred by that deed if they otherwise had any rights in the premises. My conclusion, therefore, is that the plaintiffs have failed to establish any title to the two-fifths interest in the land in dispute, and I hold that the same is in the defendant.

"It is, therefore, ordered and adjudged that the plaintiffs have no interest in the tract of land described in the complaint, and that the complaint herein be dismissed, with costs."

From this decree the plaintiffs appeal.

*Mr. B. T. Rice,* for appellants, cites: *Trustee takes fee only for life of grantor:* 25 S. C., 493; 16 S. C., 546. *And statute executes the use and vests the fee in remainder:* 69 S. C., 290; 4 Rich. Eq., 485; *Covar* v. *Cantelou,* 25 S. C.; *Snelling* v. *Lamar,* 32 S. C.; *Foster* v. *Glover,* 46 S. C. *Statute did not commence to run against Mrs. Sams until she was discovert and her coverture protects the right of plaintiffs:* 15 S. C., 339; 11 S. C., 75; *Jones* v. *Reeves,* 6 Rich.; 15 S. C., 432. *Fee granted cannot be destroyed by later or subsequent clauses in a deed:* 17 Ency., 8; 2 Blacks., 381; 33 Am. St. R., 795; 83 Va., 238; 28 S. E., 831; 13 Ency., 798; 36 S. E. R., 79; 32 S. E. R., 676; 17 S. C., 536; 11 Rich., 515; 59 S. C., 515; 2 Minor Inst., 177. *Deed should specify purpose of the trust:* 73 N. Y., 230; 2 Cruise on Real Property, sec. 32; 1 Sug. on Pow., 117, 173, 178; 33 N. Y., 107; 130 N. Y., 29; 95 N. Y., 76; 125 N. Y., 560; 127 N. Y., 426; 27 N. Y., 507; 2 Sug. on Pow., sec. 2, chap. VIII; 2 Leading Cases in Eq., Part 2. *Power cannot be extended to*

*defeat vested interests: Roux* v. *Chaplin,* 1 Strob. Eq.; *Weiters* v. *Timmons,* 25.

*Mr. W. A. Holman,* contra, cites : *Trustee had such duties to perform as required the legal estate to abide in him:* 18 S. C., 189. *Statute would run against such trustee, and through him against his cestui que trust:* 50 S. C., 120; 53 S. C., 126. *After lapse of twenty years presumption is grantor gave written instructions to convey:* 1 Hill, ch. 376; 72 S. C., 320.

October 5, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is a case of much difficulty, and the plaintiffs' counsel has made a strong presentation of the argument against the construction of the trust deed from W. D. Duncan to H. A. Duncan, adopted by the Circuit Judge. After careful consideration, however, we have concluded to adopt the reasoning of the Circuit decree as sound and convincing.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.