BENJAMIN F. WARNER vs. MAINE CENTRAL RAILROAD CO.

GEORGE B. WARNER vs. MAINE CENTRAL RAILROAD CO.

Androscoggin.    Opinion October 8, 1913.

*Admissions.    Admissibility of Letter.    Agent.    Evidence.    Exceptions.
Negligence.    Principal.    Res Gestae.    Revised
Statutes, Chapter 52, Section 73.*

The chief issue at the trial was whether the fire that destroyed the plain-
tiff's buildings was communicated thereto by the defendants' locomotive
engine. In the course of the trial, a letter written by the defendants'
station agent at Leeds Junction, where the fire occurred, and sent to the
General Manager of defendant Company, was offered by the plaintiff,
admitted and read to the jury.

*Held:*

1.  The rule governing the admission of declarations of an agent as evidence
against his principal is founded upon the idea of the legal identity of the
agent and the principal, which presupposes authority from the principal
to the agent to make the declaration.
2.  Authority to make some specific declaration may be given, or it may be
decided by implication from authority given to the agent to do a certain
act for the principal.
3.  The agent is the principal, while acting within the scope of his authority,
and in the execution of it, and his declarations and representations in
reference to and accompanying his act are admissible in evidence against
the principal in the same manner, or if made by the principal himself.
4.  In writing this letter, the next day after the fire, the agent was doing no
act for the defendant which formed a part of the particular transaction
from which its liability arose, and was inadmissible against the defendant.
5.  It is not within the scope of the authority of a station agent of a railroad
company to bind the railroad by an admission of such a liability as is
alleged in this action.
6.  If authority in him to make an admission is claimed, it should be shown
by competent proof.

On motion and exceptions by the defendant. Motion not con-
sidered. Exceptions sustained.

The actions of *Benjamin F. Warner* v. *Maine Central Railroad Company* and *George B. Warner* v. *Maine Central Railroad Company* were tried together. They were actions to recover damages to property by fire, alleged to have been communicated by one of the defendant's locomotive engines and are based on chapter 52, section 73, R. S. The action of Benjamin F. Warner was for damages for a building which was burned; the action of George B. Warner was for damages to the contents of said building. The general issue was pleaded in both actions. In the course of the trial, the plaintiff offered in evidence a letter copied in full in the opinion, and the Justice presiding admitted the same. To the admission of said letter, the defendant excepted. The jury rendered a verdict for Benjamin F. Warner for $600, and for George B. Warner for $2300, and the defendant filed a motion for a new trial in both cases.

The case is stated in the opinion.

*Ralph W. Crockett,* for plaintiff.

*White & Carter,* for defendant.

SITTING: CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

KING, J. These actions were tried together. They were brought under the provisions of sec. 73, c. 52, Revised Statutes to recover damages to property by fire alleged to have been communicated by a locomotive engine of the defendant. The first, that of Benjamin F. Warner, was for damage to the buildings burned, and the second, that of George B. Warner, for damage to the contents of the buildings. The insurance on the buildings having been paid the jury deducted the amount thereof from the damages to the buildings and returned a verdict in that suit for $600, and a verdict in the other suit for $2300. The cases come before the Law Court on defendant's exceptions and motion for a new trial. The chief issue at the trial was whether the fire was communicated by the defendant's locomotive engine. The buildings burned were situated at Leeds Junction Station, so called, northerly of the defndant's railroad, and about 80 feet therefrom.

Ernest J. Hayes, the first witness for the plaintiff, whose house was situated about 60 feet northerly from the Warner buildings, testified that he was the defendant's station agent at Leeds Junction,

and that on the day after the fire he made a report of it to the defendant by letter, as he supposed it was his duty to do. Thereupon, against objection, that letter was admitted, as follows:

> "Leeds Jct., Me.
>
> Oct. 7th, '12.
>
> Morris McDonald,
>
>     Vice-President & Gen'l Manager,
>
> Dear Sir,
>
> For your information, I beg to report that about 6.05 P. M. last night Mr. G. B. Warner ran over to my house, calling that his buildings were on fire.
>
> Upon going out on my piazza I saw flames coming up from the east side of the barn roof, went over and opened barn door, saw that the fire was on top of hay, which I could see up through the pitching hole in scaffolding, and could also see that the east side of roof had a ten or twelve foot hole burned through.
>
> In an hour the entire building was flat, with a good part of the furniture and all store goods as well as nearly all articles of clothing burned also.
>
> The damage to my house was all on the end and side, paint being badly blistered. Also two apple trees and two elm trees killed.
>
> From appearances and past circumstances of the same kind when the station buildings were catching fire frequently, I am safe in saying that Ex. 505 set the roof of Mr. Warner's barn on fire.
>
>     Yours truly,
>
>     E. J. HAYES,
>
>     Agent.
>
> Copy to F. E. Sanborn, Supt."

We are of opinion that the letter was both incompetent and prejudicial to the defendant and should not have been received in evidence.

The rule governing the admission of declarations of an agent as evidence against his principal has been frequently stated by courts and text writers, though in somewhat varying language. It was

founded upon the idea of the legal identity of the agent and the principal, which presupposes authority from the principal to the agent to make the declarations. That authority may be expressly given, as to make some specific declaration, or it may be derived by implication from authority given to the agent to do a certain act for the principal, in the doing of which the declaration is made. While acting within the scope of his authority and in the execution of it, the agent is the principal, and his declarations and representations in reference to and accompanying his act are therefore admissible in evidence against the principal in the same manner as if made by the principal himself.

The language of Sir Wm. Grant in the leading case of *Fairlie* v. *Hastings,* 10 Ves., 123, is often quoted as a correct statement of the principles upon which the declarations of an agent can be received as evidence against his principal. In that opinion he said: "What the agent has said may be what constitutes the agreement of the principal; or the representations or statements may be the foundation of or the inducement to the agreement. Therefore, if writing is not necessary by law, evidence must be admitted to prove the agent did make that statement or representation. So in regard to acts done, the words with which those acts are accompanied frequently tend to determine their quality. The party therefore to be bound by the act must be affected by the words. But except in one or the other of those ways I do not know how what is said by an agent can be evidence against his principal."

Prof. Greenleaf says: "It is to be observed, that the rule admitting the declarations of the agent is founded upon the legal identity of the agent and the principal; and therefore they bind only so far as there is authority to make them. Where this authority is derived by implication from authority to do a certain act, the declarations of the agent, to be admissible, must be a part of the res gestae." Greenleaf on Ev. 15 ed., section 114.

Mr. Mechem, in his work on Agency (section 714) states: "And (3) the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance, or so soon after as to be in reality a part of the transaction. Or, to use the common expression, they must have been a part of the res gestae. If, on

the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are not admissible. In such case they amount to no more than the narrative of a past transaction, and do not bind the principal."

Our own court has said: "The declarations, representations or admissions of an agent authorized to make a contract made as inducements to or while making the contract, are admissible as evidence against his principal. They are also admissible as evidence against him, when made by his agent accompanying the performance of any act done for him. They are not admissible and do not bind the principal, when not made as before stated, but at a subsequent time." *Franklin Bank* v. *Steward,* 37 Maine, 519, 524.

In *Packet Company* v. *Clough,* 20 Wall (U. S.), 528, 540. The Supreme Court, by Mr. Justice Strong, said: "It is true that whatever the agent does in the lawful prosecution of the business intrusted to him, is the act of the principal, and the rule is well stated by Mr. Justice Story, that 'where the acts of the agent will bind the principal, then his representations, declarations and admissions respecting the subject matter will also bind him, *if made at the same time and constituting part of the res gestae.'* A close attention to this rule, which is of universal acceptance, will solve almost every difficulty."

Applying this rule to the present case, how does it stand? The thing of which the plaintiffs complain was that the defendant's locomotive engine emitted sparks or cinders by which the buildings burned were set on fire. That, and that alone, constituted the alleged cause of action. That was the res gestae. The station agent, Hayes, had no part in that. In writing the letter, the next day after the fire, he was doing no act for the defendant which formed a part of the particular transaction from which its alleged liability arose. His statements contained in the letter amount to no more than his narrative and opinion of a past transaction, and for that reason could not affect his principal.

But it is contended that the letter was admissible because the agent in writing it was performing a duty required of him by the company to report such occurrences. Granted that he was, upon what principle could it be held that the defendant would be bound

by his statements and admissions contained in the report, without proof that it adopted those statements and admissions as its own, except for the purpose of charging it with notice thereof? As stated in *Carroll* v. *East Tennessee, V. & G. Ry. Co.,* 82 Ga.; 452, 10 S. E., 163, "It surely cannot be sound law to hold that by collecting information, whether under general rules or special orders, and whether from its own officers, agents and employees, or others, a corporation acquires and takes such information at the peril of having it treated as its own admissions should litigation subsequently arise touching the subject matter."

In that case, which was an action to recover damages for personal injuries alleged to have been caused by the defendant's negligence, reports of the accident, made to the general manager of the company, by the superintendent and by the conductor of the train, supported by his affidavit and that of several others, embracing the engineer, fireman, flagman and brakeman, were admitted in evidence on behalf of the plaintiff, over the defendant's objection. But it was held on exceptions that they were inadmissible.

Further, it needs no argument to sustain the proposition that Mr. Hayes had no authority by virtue of his office as station agent to bind the railroad company by an admission of its liability as alleged in this case. If authority in him to make such an admission is claimed it should be shown by competent proof, for it cannot be inferred as within the scope of his authority as station agent.

In the case of *Randall, Ex'r* v. *Northwestern Tel. Co.,* 54 Wis., 140, 11 N. W., 419, which was a suit to recover damages for an injury occasioned, as alleged, by the negligence of the defendant in not keeping its line in proper repair whereby the plaintiff while travelling along the highway became entangled in its wire and was injured, the admission of the following telegram from the superintendent of the telegraph company was held reversible error. "To Gen. George C. Ginty: Many thanks for your kind words for us to the gentlemen who were hurt by our old wire. I hoped to be with you tomorrow and see them, but I must go home. Have them make a bill and send me. We will pay any reasonable bill. My instructions, if obeyed, would have prevented the accident, but the repairman neglected his duty, and we must pay the penalty." The court there said: "In the absence of any proof showing that the

superintendent was authorized by the company to bind it by his admissions, we do not think the court was justified in assuming that he had such power. He was a competent witness for the plaintiff, and though holding a high position as an agent of the defendant, he was still only an agent, and for the purpose of admitting away the rights of the defendant he cannot be presumed to have all the powers of the corporation. . . . The authority to make the admission for the principal or corporation is not to be inferred from the position or rank of the party making the same. If such authority is alleged to exist, it must be shown by competent proofs."

In the case at bar the letter was introduced by the plaintiff as affirmative evidence against the defendant as an admission of liability binding upon the defendant. But according to well established principles of law it was incompetent for such purpose, and we are constrained to the opinion that its admission was prejudicial to the defendant. We must hold, therefore, that there was reversible error in admitting the letter in evidence. This conclusion makes it unnecessary to consider the other exceptions or motion.

In each case the entry will be,

*Exceptions sustained.*