AMTORG TRADING CORPORATION v. HIGGINS, Collector of Internal Revenue.

No. 343.

Circuit Court of Appeals, Second Circuit. June 12, 1945.

538

David Drucker, of New York City (Paul O'Dwyer, of New York City, of counsel), for plaintiff.

John F. X. McGohey, of New York City (John B. Creegan, of New York City, of counsel), for defendant.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. The primary problem raised by these appeals is whether the "sale" of the matches, as that term is defined in the statute, took place in the United States or in Europe. Only if the "sale" took place in the United States is the taxpayer liable for the excise tax. Cf. Indian Motorcycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277. The relevant regulations read: "Sale means an agreement whereby the seller transfers the property (that is, the title or substantial incidents of ownership) in goods to the buyer for a consideration called the price, which may consist of money, services, or other goods." They continue: "When tax attaches. In the case of a sale (other than an installment or conditional sale) the tax attaches at the instant that the sale is made. The time when a sale is made is determined by several rules of law, among the more important of which are: (1) when there is a contract to sell unascertained articles, no property in the article is transferred to the buyer until the articles are ascertained; (2) when there is a contract to sell specific or ascertained articles, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred; and (3) for the purpose of ascertaining the intention of the parties regard shall be had to the terms of the contract, the conduct of the parties, usages of the trade and the circumstances of the case." These rules were taken from the Uniform Sales Act;[1] the decisions interpreting that Act, therefore, furnish a guide to the answer to our question.

Under the Sales Act and mercantile usage, a presumption[2] arises that when

---

[1] § 18 of the Uniform Sales Act, which in turn was taken from § 17 of the English Sales of Goods Act (1893).

[2] We use "presumption" here in the sense of evidentiary material and not "as a rule of law laid down by the judge, and attaching to one evidentiary fact certain procedural consequences as to the production of other evidence by the opponent." 5 Wigmore, Evidence, 2d Ed.1923, § 4291.

[3] 1 Williston, Sales, 2d Ed., 1924, § 280b.

goods are contracted for F. O. B., the property passes to the buyer at the time they are delivered on board the carrier.[3] And what we consider the better authority indicates that the fact that the seller takes the bill of lading to his own order does not indicate a contrary intention, since "the seller's retention of ownership is merely for the purpose of security, and the beneficial interest as well as the risk of loss is on the buyer."[4] But the rule that the property passes at the time goods are delivered free on board is merely one of presumption and, as Williston points out, "it is not uncommon to impose a duty on the seller to deliver goods at their ultimate destination for a price F. O. B. the point of shipment, that is, the buyer as part of the price bears all the expense on the goods after the place of shipment or other F. O. B. points, but otherwise the contract remains one for delivery of the goods at the further point."[5]

It is evident from a reading of the contract and a look at the actions of the parties that either of the two possible interpretations as to when the "sale" took place can be supported. Where there is evidence to support what amounts to a finding of fact, we cannot reverse the lower court. But the District Judge's opinion contains statements which indicate that he applied an incorrect rule of law. He stated: "If this action were as between Amtorg and Northam, the contention raised by Amtorg that title passed at Leningrad or Hamburg might be well substantiated. The cases cited by Amtorg might be applicable to that holding. Based upon the facts before me, it seems it would be a strained interpretation to make that finding as between Amtorg and the Government. The facts before me are indicative that for tax purposes title in the United States was held by Amtorg. The presumption of title which Amtorg claims under the agreement is not conclusive and may well be vitiated by the actions of the parties thereto." We are in complete agreement with the District Judge that the "presumption" is not conclusive, as we stated above. But we cannot agree that the test is any different in the instant case from what it would be if the issue here were between Northam and Amtorg. For that reason we must remand for an ascertainment by the trial court, on an application of the correct legal principles, whether it was the intention of the parties that the title should pass in Europe.[6]

2. The second question raised on appeal must be determined only if the District Court finds that the "sale" from Amtorg to Northam occurred in the United States. To avoid the necessity of further appeals, however, we will decide that issue here.

We think that Amtorg failed to carry the burden of proof necessary to entitle it to a recovery of the $25,000 awarded it by the District Court. Assuming, arguendo, that if Amtorg had shown that Northam had paid the excise tax on the sale of some of the matches in question, Amtorg would be entitled to a deduction, there was no evidence to support Amtorg's contention that the excise tax had been paid by Northam. The letters and statement from Northam to Amtorg do not come within the category of business records and are therefore inadmissible hearsay. No other material proof was adduced to support Amtorg's argument.

Reversed and remanded for further proceedings in accordance with this opinion.

---

[4] Ibid. Cf. Uniform Sales Act, § 20(a) (2).

[5] 1 Williston, Sales, 2d Ed.1924, § 280b.

[6] The trial judge did so find; but he asserted that the "intention was never carried out in this respect." This too is difficult to understand, for if the intention of the parties was to have the title pass at the time of the delivery to the carrier in Europe, title did pass when the goods were so delivered, for both the Sales Act and the regulations make the intention of the parties the determining factor.