**UNITED STATES v. POTSON.**

No. 9606.

United States Court of Appeals
Seventh Circuit.

Dec. 23, 1948.

George F. Callaghan and Myer H. Gladstone, both of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., and Edward J. Ryan, Asst. U. S. Dist. Atty., both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, SPARKS, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant, having been indicted in four counts charging him with attempts to defeat and evade payment of his income tax for each of the calendar years 1940 to 1943 inclusive, after trial by the court without a jury, was found guilty upon each count and sentenced to two years in prison. He now asserts that the proof submitted by the Government was not fairly within the scope of the bill of particulars; that the court erred in admitting in evidence a financial statement signed by defendant dated June 30, 1930 and certain income and disbursement sheets of Colosimo's Restaurant; that the Government failed to prove the sources of income set forth in the bill of particulars, or that defendant's "expenditures" were in excess of his income for the years 1940 to 1943 inclusive.

The charge in Count 1 was that defendant, by affirmatively stating in his return that his income for the year 1940 was $12,310 and the tax due $844.58, knowingly attempted to defeat and evade payment of income tax due from him for that year, inasmuch as his true net income was $79,869.35 and the tax thereon $30,683.24. Count 2 charged a similar offense in the year 1941 averring that he filed a return showing net income $10,112.50 and tax due thereon of $1,357.33, whereas his income was $109,367.12 and the tax due thereon $59,192.51. Count 3 alleged a like false return in 1942 of a net income of $12,184 and a tax due of $2,975.92, whereas his true income was $37,769.30 and the tax $17,146.35. Count 4 similarly charged that he filed a return for 1943 showing a net income of $12,112.73 and a tax of $3,295.12, whereas his true income was $94,357.93 and the tax due $63,617.29.

The supplemental bill of particulars filed by the Government alleged, with respect to Count 1, that sources of income of defendant for the year 1940, amounting to $79,869.35, were: Salary $7,800, commissions, $1,100, rents and royalties $4,500, interest on bank deposits, notes, mortgages, etc., $2,310, gambling and the conduct of gambling business, estimated, $42,772.90, operation of Colosimo's Restaurant, estimated, $21,386.45. The bill of particulars as to each of the other three counts was similar except in amount.

Whether the proof submitted by the Government in support of the indictment and

the bill of particulars transcended the scope of the bill of particulars, requires some consideration of the evidence. Obviously the two items which are largely in controversy are the alleged income from the proprietorship of a gambling enterprise and gambling and that arising from operation of the restaurant. The Government offered evidence that in Colosimo's Restaurant, of which defendant was proprietor, gambling took place practically all of the time; that there were "crap games" from which "the house" took a "cut" or "rake-off"; that defendant took the whole amount of the "rake-off," that no record was made of the money received from the cuts, and that this averaged from $40 to $50 in normal week night games and double that amount on Saturdays and Sundays.

There was evidence also that card games were played during the same period but that the card games and dice games were not played at the same time; that a cut was taken by defendant from the poker games which amounted to more than that in the dice games; that defendant made a statement that whenever he played he got a percent of the pot, even if he played with friends; that every Sunday he won $500 at least and that he could not lose because he always got a percent of the pot.

The Government submitted evidence also that the income from the restaurant received from liquor and food was not always recorded in the books and that on occasions, usually when greater than normal business was being done, defendant would remove part of the receipts from the cash register, and then cause the register to be turned back to record the lesser amount which remained; that, in the years 1941, 1942 and 1943, no income from game commissions or gambling except from certain dice tables was declared on tax returns of the restaurant corporation.

The foregoing evidence was extensive and detailed in character but what we have said covers the general tenor of what came in in profits from gaming. The court had evidence before it of a total income in this respect of from $300 to $700 a week. If defendant's statement that he always won $500 on Sunday is to be accepted, the amount was frequently over $1,000 a week. Extended over the year these amounts become substantial.

In addition to evidence of the profits realized from taking cuts in gambling operations, defendant himself engaged in gambling successfully. Thus, one witness testified that between 1941 and 1943 he lost approximately $15,000 in poker games, at least one-half of which passed to defendant as winnings. Another witness testified that during 1941 and 1943 he lost $20,000 to $25,000 in poker games in which defendant engaged, the greater portion of which went to defendant. This witness testified, also, that in a conversation with defendant, the latter said, in answer to a remark that he was lucky, "maybe I can win $10,000 or $15,000, so what?" Other witnesses testified as to gambling with defendant.

This evidence was all in corroboration of the averments of the supplemental bill of particulars that the defendant had realized from operation of the restaurant, gambling and the conduct of gambling business large sums not reported in his income tax returns, included in the bill of particulars as sources from which additional income accrued to defendant. Clearly this evidence was within the scope of the supplemental bill of particulars.

The Government supplemented this with further evidence. It offered proof that the defendant had stated that he had never received any inheritance or gifts, except extravagant tips in the restaurant. The Government also offered proof of expenditures by defendant in excess of his declared income and that arising from other available resources in the following amounts for the following years: 1940, $78,159.35; 1941, $101,484.03; 1942, $28,800.56 and 1943, $83,137.80. This evidence was offered and received on the theory that the expenditures which defendant made could not have come from inheritances or gifts or from any income from property owned by defendant or from his capital resources but must have come from gambling and proprietorship of the gambling business as well as from the conduct of the restaurant at which the gambling took place. The bill of particulars gave fair

498

warning of such evidence in the statement it would prove additional income by proof of defendant's expenditures.

In its attempt to prove that the money expended could not have emanated from defendant's capital resources, the Government traced the defendant's financial condition from the year 1930, in order to show what he owned at that time and to show that, in the intervening years preceding the years in question, his capital assets had not substantially increased but had, as a matter of fact, deteriorated in the depression years of the early 1930's. The Government, therefore, offered in evidence a financial statement signed and sworn to by defendant given to the Foreman Bank in Chicago on June 30, 1930, in which he itemized his assets and liabilities. The returns from his property were taken into consideration by the Government in arriving at what it claimèd he had in the way of income to spend and this was followed with proof of his straitened circumstances in the years 1933 and 1934. It offered proof of his expenditures made from June 30, 1930 to December 31, 1938 and, deducting these expenditures from the cash which defendant had available to spend during the years June 1, 1930 to December 31, 1938, thus determined the amount of cash it claimed defendant had available for expenditures on December 31, 1938. It then offered proof that in the following year defendant expended more money than he had available to spend at the end of 1938 plus that which he shows on his income tax return as having received in 1939. It offered similar evidence for each succeeding year covered by the indictment, tending to prove that defendant expended, in all the years in question, large sums of money over and above the income shown during those years on his tax returns plus amounts which became available to him as income from his assets or as the result of liquidating his assets if he made such liquidation.

This evidence was in addition to that which the Government had offered to show undeclared substantial sums of money realized by defendant from the sources named in the bill of particulars, i.e., gambling and running a gambling business. The testimony as to the expenditures the Govern-

ment offered as evidence of intent to evade payment of taxes, reasoning that the extensive use of cash by defendant not shown in his income tax returns and not realized from capital assets was clear evidence of an intent to evade income tax in view of the fact that it was not reported. Among the expenditures which defendant made were those for real estate aggregating some $101,484.00 from 1939 to 1941. One of these pieces, purchased in 1941, was taken in the name of his sister-in-law from whom he took back a quit-claim deed. The grantee's agent declared some of the rental as income one year and paid the tax on it for which defendant reimbursed him. Defendant did not declare any of this rental income from the building for the years 1941-1942. Much of the property was in his wife's name, but the Government offered proof of statements of defendant that she never had anything except what he gave her. The Government offered proof also of additional expenditures of $284,000. He bought a home for $28,000; a California property for $70,000; $60,000 in Government bonds and spent $8,000 for furniture.

Defendant testified in his own behalf, denying that he failed to account for income which he received and disputing largely the testimony of various witnesses for the Government, admitting the truth of some of such testimony but contending that other portions were false and inspired by spite and prejudice. He claimed also that his expenditures were made from excess assets in foreign exchange or cash which no one knew he had.

■ The trial court had opportunity to observe the witnesses and to judge of their credibility and at the conclusion of the evidence, found defendant guilty upon all four counts. The evidence clearly sustains the verdict.

■ But, says defendant, the proof went beyond the bill of particulars. Yet the expenditures of defendant, were expressly mentioned in one of the supplemental bills of particulars. The bill further charged that additional sums, the amounts being unknown, were received from gambling, running a gambling business and operating a restaurant. The Government offered evi-

dence in support thereof and, in addition, the evidence of expenditures. Evidence of expenditures was not in contradiction or in contravention of the terms of the bill of particulars, it was merely evidence in accord therewith offered to support the contention that defendant had received additional income which he had not accounted for in the way of receipts from gambling, running a gambling business and running a restaurant. We think that defendant has no cause for complaint because of the reception of this evidence.

■ Defendant attacks the admission of Exhibit 28, the financial statement of defendant made to a bank in 1930. He contends that the Government used this exhibit for the purpose of establishing the corpus delicti of the crime charged and that, being a mere admission by defendant, its reception in evidence violated the rule than an extrajudicial admission is not admissible until the corpus delicti has been proved, and that the corpus delicti cannot be proved solely through the use of an uncorroborated admission. The history of this rule is closely allied with another that a man may not be convicted upon his uncorroborated extrajudicial confession, which had its origin in a desire of courts to guard against the tragic consequences of false confessions of guilt. Wigmore on Evidence, Third Edition, Section 2070, Volume VII, p. 395. It would seem clear, therefore, that the rule becomes applicable only when the admission is made subsequent to the time when the crime is committed. Thus in Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 606, 85 L.Ed. 876, the Supreme Court of the United States, in discussing the admissions of a defendant made prior to the charge for which he was indicted, said: "The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inher-

ent weaknesses of confessions or admissions after the fact. Cases in the circuits are cited by petitioner to the contrary. In Gulotta v. United States, 8 Cir., 113 F.2d 683, the decision turned on the similarity of confessions and admissions rather than upon any differences between admissions before and after the fact. In Duncan v. United States, 9 Cir., 68 F.2d 136, and in Gordiner v. United States, 9 Cir., 261 F. 910, the conclusion was reached without any comment upon this difference. Our consideration of the effect of admissions prior to the crime leads us to the other conclusion." Inasmuch as the admission here in controversy was made long prior to the commission of any offense charged it does not fall within the rule upon which the defendant relies. Gordiner v. United States, 9 Cir., 261 F. 910, which he cites, was expressly disapproved by the Supreme Court in the quotation above set forth. It is clear, we think, under the law announced by the Supreme Court, that the exhibit was properly received in evidence.

■ It might be well to observe another reason why the rule has no application in the present case. The corpus delicti was prima facie proved when the Government offered evidence of defendant's receipt of substantial sums of money which he failed to include in his tax returns. The failure to make return, coupled with intent to evade, constituted the corpus delicti, and, inasmuch as the Government made out the proof of such corpus delicti by substantial evidence of the receipt of unreported income by defendant, the rule was not violated but was complied with.

■ Defendant objects to Exhibits 158 to 161 inclusive, annual summary sheets of the restaurant. Exhibit 158 was identified by the employee who made it. The other exhibits were similar records made in the regular course of business. From the record, we think the court properly admitted these under U.S.C.A. Title 28, Sec. 695 [now § 1732].

We have examined the record carefully and find no error upon the part of the district court. The judgment is affirmed.