UNITED STATES v. UNITED SHOE MACHINERY CORPORATION.

Civ. A. No. 7198.

United States District Court
D. Massachusetts.

March 10, 1950.

See, also, D.C., 76 F.Supp. 315; 89 F.Supp. 357.

James M. Malloy, Holmes Baldridge, Richard B. O'Donnell, Sp. Assts. to Atty. Gen., C. Worth Rowley, Edward M. Feeney, Roy Freed, Boston, Mass., Morton Myerson, Laurence S. Flaherty, Somerville, Mass., Sp. Attys. (Herbert A. Bergson, Brookline, Mass., Asst. Atty. Gen., Gerald J. McCarthy, Sp. Asst., to Atty. Gen., Alfred Karsted, Boston, Mass., Margaret H.

Brass, Washington, D. C., Bernard I. Kaplan, Boston, Mass., Robert L. Grant, Boston, Mass., Clarence S. Walker, Cambridge, Mass., James Browning, Washington, D. C., Sp. Attys., on the brief), for plaintiff.

John L. Hall, Claude R. Branch, Charles P. Curtis, Robert Proctor and John B. Reigeluth (of Choate, Hall & Stewart), Walter Powers and Bertram H. Loewenberg (of Sherburne, Powers & Needham), Boston, Mass., and Theodore Kiendl (of Davis, Polk, Wardwell, Sunderland & Kiendl), New York City, for defendant.

WYZANSKI, District Judge.

In this civil anti-trust suit against United Shoe Machinery Corporation, the Government has offered in evidence thousands of strictly intra-corporate documents. These the Corporation had kept in its own files and had not disclosed to third persons until the Court subpoenaed them at the Government's request. Included are annual reports from operating departments to corporate officers, program committee reports, terms committee proposals and recommendations, stenographic reports of discussions of the experimental advisory committee, memoranda submitted by junior employees as to facts and opinions which they thought their seniors should take into account when formulating terms or policies, letters in which one employee directed the actions of another, and letters of the other employee reporting his action.

The Government contends that these documents are receivable against the Corporation for all purposes including for the truth of the matters stated in the documents, for the opinions expressed, for the motives disclosed and for the effect of the documents as conduct. It relies upon common-law rules including the rule that a party's admissions, even if extrajudicial, are receivable against him and also upon the statute governing regular business entries. 28 U.S.C.A. § 1732. The Corporation objects to this broad offer and asserts that it would violate the hearsay rule to receive the documents as evidence of what the communicating employee (a) saw, or (b) was told, or (c) stated was the history of a subject, or (d) held as opinions. Illustrative of what the Corporation finds objectionable are statements of employees that the employee saw certain competitive machines in a third person's factory, that the employee heard from unidentified sources that certain competitive machines were in a third person's factory, that the employee believed so many competitive machines were in a third person's factory, that a machine had a certain history, that a particular type of machine manufactured by the Corporation produced revenue amounting to so many dollars and a stated share of the Corporation's income, that a policy had been or should be followed by the Corporation, and that the Corporation had a certain share of the market in particular shoe supplies.

1. The Government argues that all these exhibits are receivable against defendant as extrajudicial admissions. The Government points out that the senior officers of the Corporation directed their subordinates to write or to cause others to write these reports, memoranda and the like. From this it is said to follow that the Corporation authorized the statements in these exhibits as corporate statements and that the statements constitute admissions of the Corporation. In reply defendant asserts that these exhibits are intra-company documents, and in its view such documents can never be extrajudicial admissions.

Both arguments go too far. They seem to be founded upon misconceptions of the law of evidence respecting extrajudicial admissions and the law of agency and of corporations respecting the degree of authority vested in a corporate agent.

It has sometimes been erroneously said that extrajudicial admissions are receivable against a party as an exception to the hearsay rule and that the reason for the exception is either because in that party's eyes the statement must at one time have seemed trustworthy or because it is only fair to put upon that party the burden of explaining his own declaration. But the masters of the law of evidence now agree that this is not the correct rationale. Morgan, The Rationale of Vicarious Admissions, 42 Harv.L.Rev. 461; Wigmore, Evi-

352

dence, 3d Ed., § 1048. See Napier v. Bossard, 2 Cir., 102 F.2d 467, 468; Milton v. United States, 71 App.D.C. 394, 110 F.2d 556, 560. Unlike statements of fact against interest (sometimes loosely called admissions), an extrajudicial admission of a party is receivable against him not as an exception to the hearsay rule but as not being within the purpose of the hearsay rule. The hearsay rule is a feature of the adversary system of the common law. It allows a party to object to the introduction of a statement not made under oath and not subject to cross-examination. Its purpose is to afford a party the privilege if he desires it of requiring the declarant to be sworn and subjected to questions. That purpose does not apply, and so the hearsay rule does not apply, where the evidence offered against a party are *his* statements.

The question remains as to what are "his" statements. The answer is to be found not in the law of evidence but in the substantive law, particularly of agency and of corporations. Wigmore, Evidence, 3d Ed., § 1078, note 1; Morgan, supra, p. 463.

To make the analysis clearer it will be easier to deal first with natural persons and then with corporations.

█ Where the party is a natural person, any statement made by him either publicly or secretly is his. See Chadwick v. United States, 6 Cir., 141 F. 225, 239; Wigmore, Evidence, 3d Ed., § 1057(3).

█ Where the natural person has an agent who makes a statement *to a third person,* the statement is the principal's if the agent was authorized to make the statement or was authorized to make on the principal's behalf true statements concerning the subject matter. Restatement, Agency § 286. This is because of the doctrine of *respondeat superior.*

█ Where the agent makes a report *to the principal or to another agent,* and all that appears is that the principal had authorized the agent to make such a report, a statement in the report is not the principal's and is not an extrajudicial admission of the principal. Restatement, Agency § 287; Morgan, supra; Mechem, Agency, 2d Ed., § 1784; Langhorn v. Allnutt, 4 Taunt. 511, 517, 128 Eng.Rep. 429, 431. The principal gave his agent limited authority to investigate a topic and report. Authority merely to report *to* a principal or a fellow agent is not authority to commit the principal. Otherwise every time a principal asked an agent to look into the history of an accident, or an invention or the state of competition, the principal would be held to be an underwriter of the report and to guarantee its trustworthiness. But the principal did not intend to vouch for it sight unseen. The principal was not ready to make the statement his own or to give it to the world. And the doctrine of *respondeat superior* does not apply.

However, if the principal expressly said either before or after the agent spoke that he vouched for the agent's statement or wanted action taken upon it, then it is his statement even though it was not made for communication to the outside world. An example of such a situation is where the principal tells one of his agents to get a report from another agent and to follow it. The second agent has authority to report in place of the principal. And authority to report as a substitute for a principal is authority to commit him. The basis for regarding the statement as the principal's is that he has expressly authorized it to be used or has adopted it. It is just as though he signed his own name to the statement or just as though he wrote in his diary that he would take whatever statement Einstein made respecting the significance of the relativity theory. Even if the principal does not expressly vouch for the agent's statement, if he acts or conducts his business in such a way as to show by implication that he adopted the statement, then such parts of the statement as he acted upon are "his". And to that extent the statement is receivable against the principal as an adoptive admission. Morgan, The Law of Evidence, 1941–1945, 59 Harv.L.Rev. 481, 559 before note 322; Morgan, Admissions, 12 Wash. L.Rev. 181, 186.

█ A corporation may make its statements by a vote of the shareholders, Cf. Clarke v. Warwick Cycle Mfg. Co., 174

Mass. 434, 435, 54 N.E. 887, or on most matters by a vote of the directors. And whether these be open or secret votes, they are admissions of the corporation. The difficulty arises with respect to officers and employees. Where these agents speak to the outside world, the corporate principal like the individual principal is, by the fiction of *respondeat superior,* held accountable for the agent's statement if he was authorized to make the statement or was authorized to make on the principal's behalf true statements concerning the subject matter. Garfield v. Peerless Motor Car Co., 189 Mass. 395, 404-405, 75 N.E. 695; McNicholas v. New England Tel. & Tel. Co., 196 Mass. 138, 142, 81 N.E. 839. However, where these agents report to other corporate agents, the mere fact that the corporation gave the agents authority to make such intramural reports does not make statements in those reports the statements of the corporation. Morgan, Mechem, all supra; Restatement, Agency § 287; Lever Bros. Co. v. Atlas Assur. Co., 7 Cir., 131 F.2d 770, 776, 777; Warner v. Maine Central R.R., 111 Me. 149, 88 A. 403, 47 L.R.A.,N.S., 830; In re Devala Provident Gold Mining Co., 22 Ch.D. 593. (1883). Otherwise every time the directors required a subordinate to make a report of an accident, an invention or the state of competition the subordinate would have authority not only to reply but also to commit the corporation. The fact that a corporation is not bound by every report which it required an employee to make to it does not mean that it can never be bound by an intramural statement in or apart from a report. There is not, as defendant contended at the bar, a doctrine that intra-company statements are never receivable as corporate admissions. Shareholders or directors may authorize or adopt the intra-company statements of the agent as the statements of the corporation. One example of such authorization or adoption would be a specific vote by the shareholders or directors before or after the agent spoke. Another would be for the shareholders or directors to vest in some official, such as the president or general manager, not merely the authority to make on behalf of the corporation statements to them and to employees but also the authority to adopt on behalf of the corporation statements by lesser corporate agents or even by strangers. A third way would be the conduct of the business by the directors in such a way as to show that the directors adopted the statements or parts of them.

The foregoing analysis puts extrajudicial admissions of a party's agent on a narrower and different basis than the Government's contention. Yet it is in accord with the facts in Vicksburg, etc., Railroad Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 30 L.Ed. 257. That case held that printed annual reports antedating an accident, and having no relation to it, made by the superintendent to the board of directors in the course of his official duty were competent evidence as against the corporation of the condition of the road. The fact that the reports were printed seems to indicate that the directors had expressly adopted them and perhaps even used them in the railroad's business. Moreover, La Abra Silver Mining Co. v. United States, 175 U.S. 423, 498, 20 S.Ct. 168, 195, 44 L.Ed. 223, is probably not squarely in point. The Court regarded the proffered reports of agents not as admissions but as examples of the *res gestae* exception to the hearsay rule. Mr. Justice Harlan said that what agents "reported to their principal in respect to the condition of the property and their acts in the course of the business, constitute part of the *res gestae* * * * between the parties". But Chicago, St. P., M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, 356, 133 A.L.R. 1445, is in conflict with the analysis here presented.

Taken as a group these three cases and the others relied on by the Government can hardly be said to establish, to use the words of Federal Rules of Civil Procedure, Rule 43(a), 28 U.S.C.A., a rule of "evidence heretofore applied in the courts of the United States on the hearing of suits in equity" to the effect that all statements by an agent acting within the scope of his authority to his principal or to another agent are admissible against the principal as his extrajudicial admissions. There is no such broad rule of evidence in the federal courts—except perhaps in anti-trust cases, of which

more is said in point 4 below. And there is no reason to suppose that in ordinary litigation the federal courts should receive against a corporation a statement in the course of duty made by one corporate agent to another unless it was shown by the offeror of the statement that the corporation either (1) authorized the agent not only to make the intramural statement but to commit the corporation by intramural statements or (2) adopted the statement by appropriate votes or by thereafter conducting its business on the basis of that statement.

In the case at bar it seems highly probable that a large number of the disputed exhibits would satisfy the second of these provisos. But the Government has not undertaken to sustain its burden of showing in detail which statements in these intramural communications were adopted by defendant in conducting its business. One reason for the Government's attitude is that it seeks to have the Court receive in evidence not only such statements of the agents as were used by the Corporation in the conduct of its business but also such as were merely put on file. While statements of the latter class have perhaps slight substantive value, it is necessary to consider whether they are receivable on some other theory than as extrajudicial admissions or adoptive admissions.

 2. Quite apart from the doctrine of extrajudicial admissions, some of the exhibits are receivable to show the directions which a superior gave a subordinate, Mirkowicz v. Reading Co., 3 Cir., 84 F.2d 537; to show the broad pattern of handling business in defendant's enterprise, Insurance Co. v. Mosley, 8 Wall. 397, 411, 19 L. Ed. 437, to show what an employee said about an act when he was doing it, New Jersey Steamboat Co. v. Brockett, 121 U.S. 637, 649, 7 S.Ct. 1039, 30 L.Ed. 1049, La Abra Silver Mining Co. v. United States, 175 U.S. 423, 498-499, 20 S.Ct. 168, 44 L.Ed. 223; to show the motive of persons acting within the scope of their authority, Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 250, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A. 1918C, 497, Ann.Cas. 1918B, 461; Garford Trucking Corp. v. Mann, 1 Cir., 163 F.2d 71; or to be taken with unrepudiated statements of other employees to show the mo-tive of the Corporation, Lathrop v. United States, 9 Cir., 2 F.2d 497.

3. Under the regular business entry statute, 28 U.S.C.A. § 1732, all of the contested exhibits are more broadly admissible.

 Each of them is a "writing * * made as a * * * record of * * * [an] act, transaction, occurrence, or event * * * made in regular course of * * business and * * * it was the regular course of * * * [defendant's] business to make such * * * record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." The reports, memoranda, proposals and recommendations do not go beyond the type of documents admitted in United States v. Mortimer, 2 Cir., 118 F.2d 266, Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680 and United States v. Potson, 7 Cir., 171 F.2d 495, 499. The letters, constituting as they do part of a regularly preserved file of business instructions, business reports of action taken pursuant to those instructions and business suggestions for future conduct, are also the type of writing contemplated by the statute. Cf. In re Fennerstein's Champagne, 3 Wall. 145, 18 L.Ed. 121. But see Amtorg Trading Corp. v. Higgins, 2 Cir., 150 F.2d 536, 539.

All these writings are admissible not only for the purpose of showing orders of a superior, pattern of conducting business, contemporary explanations of ambiguous conduct, and motive, but also for the following three purposes:

(a) For the truth of any event of which the communicating employee had personal knowledge and which occurred within a reasonable time before he wrote—a period which in the case of annual reports and most other documents would be one year.

(b) For the truth of any event of which the communicating employee was informed, mediately or immediately, by another of defendant's employees who had personal knowledge of it and of which the communicating employee had made a record within one year of the event. United States v. Mortimer, 2 Cir., 118 F.2d 266. Cf. United States v. Cotter, 2 Cir., 60 F.2d 689, 693;

United States v. Potson, 7 Cir., 171 F.2d 495, 499.

(c) For the fact that third persons outside the defendant's business organization had made the statements attributed to them. They are not admissible for the truth of those statements. Clainos v. United States, 82 U.S.App.D.C. 278, 163 F.2d 593; United States v. Grayson, 2 Cir., 166 F.2d 863, 869; Gencarella v. Fyfe, 1 Cir., 171 F.2d 419. See, contra, Pollack v. Metropolitan Life Ins. Co., 3 Cir., 138 F.2d 123, 129 (where a hospital record was admitted for the truth of what a patient said) and United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 409 (where the original record apparently shows that, over objection, the Court received for the truth of the matter therein asserted General Motors' field representatives' reports to their superintendents of what dealers said).

The documents are not admissible under 28 U.S.C.A. § 1732 for all the opinions expressed by the employees. Some courts have regarded the statutory phrase, "record of any act, transaction, occurrence, or event", as justifying a court in receiving some opinion evidence as, for example, a coroner's certificate that death was caused by "accident—eating canned meat," Hunter v. Derby Foods, 2 Cir., 110 F.2d 970, 972, 133 A.L.R. 255, or a hospital record showing a doctor's diagnosis of cerebral hemorrhage, Buckminster's Estate v. Commissioner of Internal Revenue, 2 Cir., 147 F.2d 331, or other medical opinion reported in hospital or official records. See Note, 48 Col.L.Rev. 920, 929. Even these cases do not go so far as to permit the introduction in evidence of written opinions about facts of which the entrant and those with whom he is associated in business have no personal knowledge. The advocates of a broad construction of 28 U.S.C.A. § 1732 would not favor admission of such evidence. See Morgan, The Law of Evidence, 1941-1945, 59 Harv.L.Rev. 481, 564. Cf. New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, 304; England v. United States, 5 Cir., 174 F.2d 466, 469. If the written opinions are about facts of which the entrant or those with whom he is associated in business have personal knowledge, and

opinions of that class are regularly kept in the regular course of business, their admissibility under 28 U.S.C.A. § 1732 depends on the type of opinion. At the least, opinions which disclose a United employee's motive, or accompany and characterize his act, or are a shorthand summary of facts personally observed by him or a business associate are receivable.

4. The three preceding sections of this opinion have assumed that the hearsay rule is applicable to civil anti-trust suits and have shown how far the exhibits would be receivable even if that rule with its modern exceptions were applied. But in a civil anti-trust suit in which the Government can secure against a defendant at most an injunction and order without monetary damages, See, United States v. Cooper Corp., 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071, the trial judge is not required to exclude every type of hearsay evidence which would be excluded in other types of cases. While the Supreme Court seems never to have stated that doctrine in those words, the doctrine is implied in what that Court has actually done, is required to achieve consistency in the application of the anti-trust laws by the District Courts and by the Federal Trade Commission, and is essential if the task of finding the facts in governmental civil anti-trust proceedings is not hereafter to be taken entirely away from judges and entrusted exclusively to administrative agencies.

So far as this Court is aware, the Supreme Court has never either reversed or criticized a trial court for admitting hearsay evidence in a civil anti-trust case tried without a jury. And all federal courts in anti-trust cases do receive, though perhaps on grounds which would be indefensible in a simple tort or contract case, the intramural communications passing between agents of the same corporation. United States v. Schine Chain Theatres, D.C.W.D.N.Y., 63 F.Supp. 229, affirmed with modifications 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245; United States v. Hartford-Empire Co., D.C.N.D. Ohio, 46 F.Supp. 541, 553, affirmed with modifications 323 U.S. 386, 65 S.Ct. 373, 89 L. Ed. 322; American Tobacco Co. v. United

States, 6 Cir., 147 F.2d 93, 118; United States v. Corn Products Refining Co., D.C. S.D.N.Y., 234 F. 964, 978; United States v. Vehicular Parking, D.C.Del., 52 F.Supp. 751, 755. That tolerance is not properly attributable to a crusading spirit or an attitude of hostility toward business. It developed in the light of the rule that, even without explicit statutory permission, the Federal Trade Commission may utilize hearsay evidence in making findings. Phelps Dodge Refining Corp. v. Federal Trade Commission, 2 Cir., 139 F.2d 393, 397. "* * * Rules which bar certain types of evidence in criminal or quasi-criminal cases are not controlling in proceedings * * * where the effect of the Commission's order is not to punish or to fasten liability on respondents for past conduct but to ban specific practices for the future in accordance with the general mandate of Congress." Federal Trade Commission v. Cement Institute, 333 U.S. 683, 706, 68 S. Ct. 793, 806, 92 L.Ed. 1009.

It is difficult to imagine any satisfactory ground for deciding that evidence which is admissible before the Federal Trade Commission is inadmissible before a judge sitting without a jury in a civil anti-trust case brought by the Government. There is no difference between the substantive anti-trust law applied by the Commission and that applied by the Court. In a *civil* anti-trust case the Government has the unfettered choice of going before a Commission or before a court without a jury. The Commission's cease and desist order may in many cases be as drastic as the decree of a District Court, except for the one point that the District Court's decree unlike the Commission's order can be used as prima facie evidence in a private treble damage suit. 15 U.S.C.A. § 16. The Commission's hearing officer may be no more experienced or skillful than a District Judge in sifting the reliable hearsay from the untrustworthy hearsay. And the admission of hearsay evidence by a Commission undercuts just as effectively as the admission of hearsay evidence by a Court the fundamental objective of the hearsay rule—the opportunity to hear the witness under oath and to subject him to cross-examination.

One other consideration deserves mention. Recent years have seen a marked increase in the number of social and economic controversies which have been removed from the courts to administrative agencies for adjudication. Since there is a widespread belief that administrative adjudication gives less security to private interests than does judicial process, Ng Fung Ho v. White, 259 U.S. 276, 285, 42 S.Ct. 492, 66 L.Ed. 938, many persons regret this trend. Yet the original demand for administrative adjudication was traceable, in part at least, to the unwillingness of courts to admit evidence which they allowed administrative agencies to receive and act upon. And that demand would be reinforced if the courts were to continue to say that in social and economic controversies where the remedy is not imprisonment, or fine, or damages but an order prescribing future conduct, a court sitting without a jury cannot receive hearsay evidence even though without statutory authority an administrative agency could do so. To preserve their own jurisdiction the courts must in this type of controversy relax the rigidity of the hearsay rule.

This does not, however, mean that all hearsay is admissible for all purposes in a civil anti-trust suit. The testimony must be of the kind that usually affects fair-minded men in the conduct of their more important affairs. Unless the author of a hearsay statement had personal knowledge or other special opportunity to acquire trustworthy information, his statement should not be relied on for any critical point. It is unnecessary to be more particular at this stage of the case at bar. At this juncture the only problem is whether the Court should receive *the plaintiff's offer of business communications written by defendant's employees and preserved by defendant in its files to aid it in the conduct of its business*. To what extent statements in those documents should be relied upon will be determined when this Court makes its

findings. And if any such document is relied upon, this Court will probably cite it specifically in the finding for which it is used.

Objections on the ground of hearsay made to communications of one employee of defendant to another employee of defendant and preserved by defendant in its files are overruled.