# BLAKE & al. vs. CLARK.

By the conveyance of a mill, *eo nomine*, no other land passes in fee, except the land under the mill and its overhanging projections. But the term "mill" may include the free use of the head of water existing at the time of its conveyance, or any other easement which has been used with it, and which is necessary to its enjoyment.

In giving a construction to the report of commissioners appointed by the Judge of Probate to make partition of an intestate's estate, the plain intent of the commissioners, though it appears only by way of recital, will be carried into effect, if the parties concerned have acquiesced, by a seperate enjoyment of the property, corresponding with such intent.

The right of the tenant to an easement in the land, is no objection to the demandant's recovery in a writ of entry.

This was a writ of entry, brought by the heirs of *Samuel Blake*, in which they counted on their own seisin within twenty years, and a disseisin by the tenant. It was tried before *Parris J.* upon the issue of *nul disseisin*.

The subject of controversy was a certain mill-yard and appurtenances, originally part of lot *No.* 96, in *Turner*; and the question was whether the tenant owned it in fee, or whether he had only an easement therein.

It appeared that the real estate of the ancestor was described in the inventory returned by his administrator, as consisting of his "homestead farm in *Turner*, with the buildings thereon, a saw-mill and corn-mill," together with forty acres of out lands. In the assignment of dower to the widow, *Dec.* 1, 1802, part of the premises was set off to her in these words,—"one half of the corn-mill, and one quarter of the mill-yard."

In the division of the real estate among the heirs at law, *Feb.* 10, 1803, being all the real estate of the deceased, except the part set off to the widow for her dower, the commissioners described the property to be divided, as "the homestead farm of said deceased, except what is set off for the widow's dower, together with the saw-mill, and the one half of the corn-mill." They then set off to *Thatcher*

*Blake* certain property, " also the said saw-mill, in full of his share."
To *Edward*, among other things, they assigned " a privilege of draw-
ing water sufficient for carding wool, and for that use only, from the
pond which contains the water for the use of the saw-mill and corn-
mill, and at the place where the clapboard mill now stands." To
*Joseph* they in like manner assigned " one fourth part of said corn-
mill, in full of his share." And to " *Silas*, one fourth part of said
corn-mill; also a piece of land being all the residue of lot *No.* 96,
not before set off; excepting one acre and twenty-three rods, ad-
joining to and for the use and accommodation of the mills."

*Joseph's* " fourth part of the corn-mill" was conveyed to *Thatcher*,
*March* 10, 1807 ; on which day, by deed of general warranty, re-
corded *Dec.* 7, 1807, *Thatcher, Samuel, Edward, Grinfill* and *Si-
las*, demandants, conveyed to *Oliver Pollard* " a certain corn-mill
situated," &c. " known by the name of *Blake's* mill, with all the
privileges and appurtenances thereto belonging. To have," &c.

On the 7th day of *December*, 1807, *Thatcher Blake* conveyed to
*Samuel*, with general warranty, " a certain saw-mill situated," &c.
" being the same that was set off to the said *T. B.* in the settlement
of the estate of *Samuel Blake*, deceased, together with the right to
the mill-yard which is set off to the said *T. B.* with the saw-mill
aforesaid." This property *Samuel* conveyed by the same descrip-
tion, to *Oliver Pollard*, by deed of general warranty, *March* 30,
1813 ; and *Pollard*, in the like manner, conveyed the estates men-
tioned in his two deeds of purchase, by the same description, to the
tenant, *March* 29, 1815.

The tenant, to show that the mill-yard had been expressly recog-
nized by the demandants as set off with the mills, in the division of
their father's estate, produced several deeds from *Samuel, Edward,*
and *Grinfill Blake*, by which they had conveyed divers parcels of
land described as bounded " on the mill-yard," and " by the line
of the mill-yard as set off in the settlement of the estate" of their
late father. And it appeared that this mill-yard, which contained
about one acre and fourteen square rods, was known as such by the
commissioners and others at the division of the estate in 1803 ; hav-
ing always been used as a place for the deposit of lumber and logs,

and for a convenient passage to and from the mills. At the time of the division, the demanded premises contained an oil-mill, card-board-machine, and potash works, contiguous to the mill-yard defended by the tenant. On this yard he had, more than six years since, erected a store and potash works.

Upon this evidence the tenant insisted that he was entitled to hold the mill-yard in fee simple ; and if not, yet that by the deeds of *March* 10, and *Dec.* 7, 1807 ; and the subsequent occupancy under them for more than twenty years, all the demandants, except the grantors therein named, were disseised of the premises, and had lost their right to maintain a writ of entry. Both these points the judge overruled ; and instructed the jury to consider whether the premises had been actually occupied by the tenant and his grantors for more than twenty years, in a manner inconsistent with the mere enjoyment of an easement therein. This fact they found against the tenant ; returning a general verdict for the demandants ; which was taken subject to the opinion of the court upon the points raised at the trial. If the court, on these points, should be of opinion for the demandants, it was agreed that the premises, and their increased value by reason of the tenant's buildings, should be estimated by commissioners appointed by the parties.

*Greenleaf* and *W. K. Porter*, for the tenant, contended that the mill-yard passed with the mills. The original division was declared to be of all the estate. Parcels were set off to several of the heirs, in full of their respective shares. The yard was described as reserved for the use and accommodation of the mills alone. And it was so recognized by some of the demandants in their deeds. *Thatcher* declares that it was set off to him in the division of his father's estate ; and *Samuel* repeats the same in his deed to *Pollard.* Others of the demandants confirm this by their deeds, bounding their grantees by the line of the mill-yard, as set off in the same division. These recitals, being of a particular fact, are sufficient to estop the parties. *Denn v. Cornell,* 3 *Johns. Ca.* 174 ; *Shelly v. Wright, Willes* 11. It is true the soil of a way used for a road to a grist-mill does not pass by a grant of the mill and appurtenances, without some farther

expression. *Leonard v. White,* 7 *Mass.* 9. But here is the "farther expression" required.

But whether this be so or not; here are deeds of the mill-yard in fee, and an occupancy under them for more than twenty years; which is sufficient evidence of a disseisin, commencing with the delivery and registry of the deeds, and the entry of the grantee. 3 *N. Hamp. R.* 27.

*Fessenden,* for the demandants, cited 3 *Cruise's Dig.* 471 ; *Stearns on real actions,* 192 ; *Perley v. Chandler,* 6 *Mass.* 454 ; *Worcester v. Greene, ib.* 425 ; *Rehoboth v. Hunt,* 1 *Pick.* 224 ; *Thompson v. Propr's Androsc. bridge,* 5 *Greenl.* 62 ; *Ken. Propr's. v. Springer,* 4 *Mass.* 416 ; *Propr's of No. Six v. McFarland,* 12 *Mass.* 325 ; *Boston mill-corp. v. Bulfinch,* 6 *Mass.* 229 ; 4 *Dane's Abr.* 748 ; *Jackson v. Wheeler,* 6 *Johns.* 272 ; *Adams on Eject.* 118 ; *Bull. N. P.* 96 ; 2 *Selw. N. P.* 636, *note* ; *Peake's N. P.* 197.

Weston J. delivered the opinion of the Court at the ensuing *July* term in *Waldo.*

The demandants, having proved their pedigree, and that their ancestors died seised of the demanded premises, have established their title ; unless they have parted with it to those under whom the tenant claims ; or he has acquired a title by disseisin. The saw mill, without any further description, was set off by the commissioners appointed to divide the estate, to *Thatcher Blake,* one of the demandants. Doubtless by this term, the fee of the land, upon which the mill stood, would pass. Lord *Coke* enumerates a variety of terms, which, being used in a conveyance, carry lands ; and he states to what extent. *Co. Lit.* 4. *b.* The land passes, because included in the term used. The word mill, or *molendinum,* is not among those to which he adverts ; and probably no authority can be adduced, in which it has been held to convey, *ex vi termini,* any part of the adjoining land. That upon which it stands, may be regarded as including land, over and upon which the slip, if it has one, or any other necessary projection from the mill passes. The term may embrace the free use of the head of water, existing at the time of the convey-

ance, as also a right of way, or any other easement, which has been used with the mill, and which is necessary to its enjoyment. We are not satisfied that it can, or ought, to be further extended.

But it is urged that, taking the whole report of the commissioners together, it is manifest that they intended to set off the land defended by the tenant, to the owners of the corn and saw mills. If this did satisfactorily appear, in any part of their report, although it might be by way of recital; yet if the intent was plain, and the enjoyment of the property, and the acquiescence of all concerned, had corresponded with this construction, there does not appear to be any legal objection to giving it effect. ' In the assignment of dower to the widow, there is set out to her one half of the corn mill, and one quarter of the mill yard. This was sufficient to give her a free hold in that portion of the yard; but the tenant does not hold under her, and her estate is probably spent. The mill yard is no where mentioned by that name, nor is it any where adverted to by them; except in their assignment to *Silas Blake*. He has among other things, all the residue of lot number 96, not before set off. The commissioners seem to have been aware that this would include the mill yard; for they proceed to except from the residue thus assigned, one acre and twenty-three rods adjoining to, and for the use and accommodation of the mills. The natural and most obvious import of those terms seems to denote an easement, to continue only so long as the mills should be occupied as such; and that the owner of the fee would have a right to appropriate the land to any object, consistent with the easement, and to hold it discharged of the easement, when no longer wanted for this purpose. So to regard it, would be giving full effect to the language of the commissioners. And the jury have found that the subsequent use and occupation of the premises by the tenant and other owners of the mills, under whom he claims, has been in accordance with this construction. And we are of opinion, that the mill yard was by the commissioners attached to the mills, as an easement only.

There is nothing inconsistent with this view of the case, in the deed of *March* 10, 1807, or of *December* 7, 1807, under which the tenant claims; the former conveying the corn-mill with all the privileges

and appurtenances thereto belonging; and the other the saw-mill, with the right to the mill-yard set off to *Thatcher Blake.* If land could pass as appurtenant to the mill, which is not warranted by the authorities, it is a term much more appropriate to an easement or incorporeal hereditament, attached to a thing corporeal. *Co. Lit.* 121 *b.* ; 1 *Com. Dig. Appendant and Appurtenant ; Leonard v. White,* 7 *Mass.* 6. The right to the mill-yard, must be intended to be that which the party might lawfully convey. The tenant's case derives as little support from the monuments referred to, and recitals made, in certain deeds executed by some of the demandants. They do not conflict with the title of the demandants to the fee of the premises, subject to the easement. Nor does the right of the tenant to the enjoyment of the easement, interpose any objection to their recovery in this action. *Thompson v. Propr's of Androsc. bridge,* 5 *Greenl.* 62.

As to the title of the tenant to the fee, arising from disseisin, it has been negatived by the jury ; and we see no reason to disturb their verdict upon this point.

Upon the principles of the common law, when *nul disseisin* was pleaded, the demandant was entitled to judgment, upon proving the title set forth in his count. But by the statute of 1826, *ch.* 344, the demandant is holden to prove that the tenant is in possession of the demanded premises, or that he withholds the same from him, which the plea was before understood to admit. The tenant by his own testimony proved himself in possession. That alone might not be sufficient to sustain the action ; for it might be such a possession as was consistent with his right to the easement ; but his erection of a potash building and a store upon the premises, and his claim to hold the whole in fee, which he urged at the trial, was evidence to justify the jury in finding, not only that he was in possession of the demanded premises, but that he withheld the same from the demandants. According to the agreement of the parties, the increased value of the land, by reason of the improvements, is to be estimated as in other cases. And the value of the land, subject to the easement, is to be ascertained, had no improvements been made on the same. The

verdict is then to be amended accordingly ; the demandants having a right, if they shall so elect, to abandon the premises to the tenant, as the parties have stipulated.