CHARLES P. WEBBER et als. vs. HERBERT AUSTIN.

Washington.    Opinion July 26, 1923.

*A deed conveying a dwelling and "land belonging thereto" embraces such land as is
reasonably necessary to be used with the dwelling as such.    A deed by an attorney
with a written power authorizing him to convey "village property appertaining
to the tanneries or necessary to their enjoyment," conveying village property,
the legality of which is unquestioned for seventeen years, in absence of testi-
mony pro or con, is supported by a presumption of fact that the land so
conveyed did appertain to the tanneries or necessary to their enjoy-
ment.    A grantee is not estopped to dispute his grantor's title
unless there remains in grantor some right, and there is
some duty toward him in grantee.    A deed subject to a
mortgage and a deed from the mortgagee creates the
same situation as a deed from one grantor of the
land unmortgaged.    Excepted premises not
granted premises, hence grantee not estopped
to deny title of grantor.    Pleadings signed
by counsel are presumed to be authorized
only so far as they concern the case
in which they are filed.*

Where a deed describes as conveyed a dwelling and "land belonging thereto"
it is a good conveyance notwithstanding the land is not described in writing,
delineated on a plan or marked by monuments.    The deed in such case includes
the building and land used with it and reasonably necessary to be used with
it as a dwelling.

Where an attorney having a written power authorizing him to convey "village
property appertaining to the tanneries or necessary to their enjoyment" sells
and deeds village property, and for seventeen years the legality of his act is
unquestioned, in the absence of testimony pro or con, it may reasonably be
presumed as a fact that the land so conveyed was land appertaining to the
tanneries or necessary to their enjoyment.

To create an estoppel on the part of a grantee to dispute his grantor's title there
must be some right remaining in the grantor and some duty towards him in
the grantee.    A grantee is ordinarily under no such obligation.    A man who
takes a warranty deed in fee is not estopped from denying the seizin of his
grantor, or from alleging his want of title or the existence of incumbrances.

When a man receives a deed subject to a mortgage but otherwise unqualified
and also obtains a deed from the mortgagee he is in the same situation as if he
had received a similar conveyance of unmortgaged land from one grantor.
A grantee so circumstanced is not estopped to dispute his grantor's title.

In the instant case the defendant has proved a better title than that of the plaintiff to a building and lot. As to the remainder of the demanded premises he has mere possession. He is not estopped to dispute the plaintiff's title thereto. He does dispute the title for several reasons, neither of which is valid.

While counsel in signing pleadings are presumed to be authorized so far as concerns the case in which such pleadings are filed, no such presumption exists when the same are sought to be used by other persons in other actions.

On report. A real action to recover land in the village of Grand Lake Stream, in Grand Lake Stream Plantation. Plea, nul disseizin. Title of plaintiffs is based upon two mortgages. Defendant claimed title by deed, and also by adverse possession. At the conclusion of the evidence, by agreement of the parties, the case was reported to the Law Court. Judgment for plaintiffs, as stated in the opinion. No damages.

The case is fully stated in the opinion.

*C. B. & E. C. Donworth and Ryder & Simpson,* for plaintiffs.

*R. J. McGarrigle, F. B. Livingstone and W. R. Pattangall,* for defendant.

SITTING: CORNISH, C. J., HANSON, DUNN, MORRILL, DEASY, JJ.

DEASY, J. On report. Real action in which the plaintiff seeks to recover land in the village of Grand Lake Stream described in the declaration thus:—

"A certain tract of land situated on the easterly side of Grand Lake Stream, in the Plantation of Grand Lake Stream, heretofore township number three (3) in the first range of townships north of Bingham Penobscot Purchase, and known as Hinkley township, which tract of land is described as follows: Beginning on the westerly side of Church Street, at a point six hundred fifty (650) feet northerly of Milford road, and running westerly, at a right angle with line of said Church street, ten (10) rods; thence northerly, at a right angle, thirty-five (35) rods; thence easterly, at a right angle, twenty-six (26) rods; thence southerly, at a right angle, twenty-seven and one half (27½) rods; thence westerly, at a right angle, sixteen (16) rods; thence southerly, at a right angle, by westerly line of Church street, to place of beginning."

The plaintiffs' title is based upon two mortgages from Charles W. Clement, Trustee to John P. Webber, one dated May 7, 1887 for

forty thousand dollars, and the other dated December 13, 1887 for twenty-five thousand dollars, both mortgages having been assigned to the plaintiff Charles P. Webber and by him foreclosed. The other plaintiffs hold under deed from Charles P. Webber. These mortgages contain covenants in the usual form. The description in them includes the locus.

The defendant interposes three grounds of defense: (1) Title by deed. (2) Title by adverse possession. (3) That even if the defendant has acquired no title either by deed or adverse possession the plaintiffs have failed to make out a prima facie case entitling them to prevail over the defendants mere possession admitted by the declaration.

DEFENDANT'S RECORD TITLE.

The essentials of the defendants record title are these: Deed from Charles P. Webber (plaintiff) et al, dated August 14, 1896 running to the International Leather Co. Deed of same date from Charles W. Clement, Trustee, to the same grantee. A series of deeds in some of which the descriptions are ambiguous, but which are undoubtedly sufficient to transmit to the defendant the International Leather Company's title to the locus. The defendant as above indicated holds under a deed from the plaintiff signed by his authorized attorney.

This deed includes large tracts of land in various parts of Washington County. We are concerned only with this part of the description. "Also any and all other buildings of every kind whatsoever, and the several lots of land belonging to the same situated within the limits of the Village of Grand Lake Stream in said town of Hinckley as said limits are delineated in the Atlas aforesaid." (Colby's Atlas).

Whatever buildings and land belonging to the same in the village of Grand Lake Stream were in 1896 owned by Charles P. Webber passed by this deed to the Leather Company, the defendant's predecessor.

It fairly appears from the evidence that in 1896 there was one building, and only one, standing upon the land described in the writ; that this building, known as a camp, still stands and is occuped during a part of each year by an Indian family named Tomah.

From these facts it is obvious that in 1896 the plaintiff Charles P. Webber parted with his title to this camp and the land belonging thereto, by deed to the Leather Company through whom the defendant takes title. The plaintiff of course cannot recover the property which he thus conveyed.

The phrase "land belonging thereto" is vague, but is sufficient to convey a camp lot.

A copy from Colby's Atlas introduced in evidence indicates the camp to be upon Lot 12 in the section between Bates and Lake Streets. The surveyor however testifies that the camp is not in the place thus indicated. The court has no data from which it can describe the lot. But the camp and lot used with it and reasonably necessary to be used with it are owned by the defendant and must be excepted from any land which the plaintiff recovers.

The plaintiff raises this objection to the defendant's record title:— The deed to the Leather Co. was not signed by Charles P. Webber personally, but by his father John P. Webber as his attorney. The deed plainly includes the camp and lot, but the plaintiff says that his father had no right to so include it inasmuch as his power of attorney authorized the sale only of village property appertaining to the tanneries, or necessary to their enjoyment.

But Charles P. Webber allowed many years to pass after the deed was recorded before making the claim that his father had exceeded his authority. So many years indeed were permitted to pass that probably any claim against the estate of his father on account of selling property which (as the son now says) he had no right to sell has been barred by time.

In view of this long delay and the general situation as disclosed by the evidence we think that in the absence of direct testimony pro or con, we may fairly assume that in 1896 the camp and lot were village property appertaining to or necessary to the enjoyment of the tanneries.

### ADVERSE POSSESSION.

The defendant urges that the plaintiffs have never had possession of the locus, or any part of it. This is immaterial. The plaintiffs do not claim title by possession, but by deed. There are and have been no buildings upon the land to which possessory title is claimed.

There is no evidence of fencing, cultivation or other use. The defendant utterly fails to show title by adverse possession.

This would end the case and the plaintiffs be entitled to recover the land claimed, except the camp and its curtilage but for the further claim that the plaintiffs have failed to produce evidence sufficient to overcome the defendant's mere possession admitted by the writ.

### Estoppel.

But the plaintiffs say that the defendant under the law cannot be permitted to dispute their title. They invoke the legal principle which is in the brief of their learned counsel thus stated:

"A party to an action seeking to sustain a title to real estate derived only from the adverse party will not be heard to deny that such adverse party ever had title."

But this principle does not apply to the pending case for the following among other reasons:

The only real estate to which the defendant has "derived title from the adverse party" is the camp and camp lot. He does not "deny that such adverse party ever had title" to the camp lot. To do so successfully would be to exchange his title by deed for mere possession which is the very feeble tenure under which he holds the rest of the land. To do so would be to "sit on a limb and saw himself off."

To the rest of the land he has only the prima facie right that is presumed from mere possession. If the plaintiffs can show a prior warranty deed or a prior seizin within twenty years, however brief and even without deed, they may lawfully dispossess him. But if they have no title he is not required to surrender possession to them, and the fact that he received a deed of the camp lot from one of them does not estop him from proving, if he can, that the plaintiffs have no title to land of which he received no deed from them.

Again the principle does not apply to transactions like that shown in the present case where the deed is absolute and unqualified, and no duty or obligation on the part of the grantee remains unperformed.

If it did so apply no grantee could maintain a suit upon his grantor's covenant for title. Such a suit is based upon a denial of the grantor's title.

Illustrations of persons to whom the principle properly applies are trustees, tenants, vendees sued for unpaid purchase money and grantees in deeds reserving easements, or imposing restrictions or conditions.

But in a transation like that involved in the present case, a simple and ordinary transaction where land is sold, paid for and transferred by a deed conveying an unconditional fee or even lesser estate, (*Robertson* v. *Pickrell*, U. S. Supreme Court, 27 L. Ed., 1049), the grantee is not estopped to dispute his grantor's title.

Among many supporting authorities are the following:—

"A grantee is not ordinarily estopped to deny his grantor's title." 10 R. C. L., 683.

"It is very generally held that by accepting a deed of conveyance in fee and going into possession a grantor is not estopped to deny the title or seizin of his grantor." 21 Corpus Juris, 1069.

"The vendee holds adversely to all the world and has the same right to deny the title of his vendor as the title of any other party." *Merryman* v. *Bourne*, U. S. Supreme Court, 9 Wall., 592.

"There must be remaining some right in the grantor and some duty towards him in the grantee in relation to the surrender of the estate. A grantee in fee is under no such obligation. A man who takes a warranty deed in fee is not estopped from denying the seizin of his grantor or from alleging his want of title or the existence of incumbrances." *Foster* v. *Dwinel*, 49 Maine, 49.

The plaintiffs' counsel cites another somewhat analagous principle stated in his brief thus: "When both parties claim under the same person neither of them can deny his right and as between them the elder is the better title and must prevail." But this principle is not applicable.

True the plaintiffs' title is claimed under Clement. True, also the defendant has a deed of the camp lot from Clement. Therefore "both parties claim under the same person" to wit, Clement. But the defendant does not deny Clement's title. He claims simply that Clement did not by valid deed convey his title to Webber.

Seeking for some ground of estoppel that will bar the defendant from showing, if he can, any weakness in the plaintiffs' title, the latter invokes this further well-settled and salutary rule: "A grantee is estopped to deny the validity of any mortgage to which his deed recites that the conveyance to him is subject."

The defendant's deed from Clement of the camp lot is made expressly subject to the Webber mortgages. But the defendant did not, and does not deny the validity of the Webber mortgages as incumbrances on the lot thus acquired. Recognizing their validity he procured a deed from the mortgagees on the same day upon which he received his deed from Clement.

When a man receives from both mortgagor and mortgagee unqualified conveyances with no covenant, conditions or duties on his part, he is of course in the same situation as if he had received a similar conveyance of unmortgaged land from one grantor. A grantee so circumstanced is not estopped to dispute his grantor's title. *Foster* v. *Dwinel*, supra. *Merryman* v. *Bourne*, supra.

See *Kentucky Union Co.* v. *Patton*, (Ky.), 69 S. W., 791. *Loeb* v. *Struck*, (Ky.), 42 S. W., 401. *Alcorn* v. *Brandeman*, (Cal.), 78 Pac., 343.

The defendant is not bound by estoppel. We have therefore to inquire into the grounds upon which he bases his challenge of the plaintiffs' prima facie title.

### DEFENDANT'S OBJECTIONS TO PLAINTIFFS' TITLE.

(1)  That the mortgages from C. W. Clement, Trustee, referred to above as the source of the plaintiffs' title are void because not consented to as required by the terms of the trust. Clement was by the instrument creating the trust empowered to sell, convey and mortgage the trust property or any part of it. But "before making any large sale of property" the instrument provides that the written consent of F. and P. should be obtained. It does not appear that F. and P. or either of them consented to the giving of the Webber mortgages.

It may well be doubted that to give effect to the intent of the parties, the word "sale" as used in the above quoted phrase should be held to include "mortgage." But, however this may be, under the circumstances of this case the required consent may be and should be presumed.

Thirty-five years have passed since the mortgages were given. Thirty years have elapsed since they were foreclosed. About twenty-seven years ago the International Leather Company, a corporation of which Clement was president, received a deed from the Webbers expressly recognizing their title under the mortgages. It does not

appear that either F. or P. or any cestui que trust has ever questioned the validity of the mortgages. If the cestuis should now attempt to defeat the mortgages they would probably be held barred by laches. As between the plaintiffs claiming under the mortgages and the defendant who (as to all but the camp lot) has mere possession it may well be presumed that the consent was given as required. *Freeman v. Thayer*, 33 Maine, 76. *Pejepscot Proprietors v. Ransom*, 14 Mass., 145. *Pope v. Patterson*, (S. C.), 58 S. E., 945.

(2) That the description contained in the mortgages is vague and insufficient. This point is plainly not well taken. The mortgages include the whole township of Hinckley in which the locus lies, subject, however, to certain exceptions. The case shows an express admission that "the exceptions in the deeds are outside the disputed premises."

(3) That the foreclosures are invalidated by errors. The court perceives no fatal errors in the foreclosure proceedings. But in any event such error would be immaterial. A mortgagee does not have to foreclose in order to maintain a real action to recover the mortgaged premises. The mortgagor may show in defense that the mortgage has been paid; or he may move for conditional judgment, but it is not a defense to show that there has been no legal foreclosure or even no foreclosure at all. *Hadley v. Hadley*, 80 Maine, 459. *Davis v. Poland*, 99 Maine, 348.

(4) The learned counsel for the defendant cites circumstances, only a part of which appear in evidence, tending, as he argues, to prove that the Webber mortgages have been paid and satisfied. Clearly, however, he has not sustained the burden of proving such payment.

(5) That the plaintiffs are estopped to assert title to the locus. In 1891 four years after the Webber Mortgages were given and about a week before their foreclosure, John P. Webber received from Chas. W. Clement, Trustee a warranty deed of Hinckley Township, excepting inter alia the part "that was set off and lotted off into the Village of Grand Lake Stream." Of course the locus is within this exception. This the defendant relies upon as creating an estoppel. But the situation presents none of the features of an estoppel. It is true that under certain circumstances (as stated above) a grantee may be estopped to dispute that the grantor at the time of the conveyance had title to the granted premises. But land excepted is not granted premises. Excepted land is in the same situation as is any

other land which the grantor owns and retains.   That land is mentioned in a deed as excepted no more creates an estoppel against the grantee than if it were mentioned as a boundary.

(6)   In 1905 one John W. Baker brought a real action against John P. and Charles P. Webber to recover a very large tract of land. In that action a disclaimer was filed, signed by the defendants (Webbers) by their attorneys.   By this proceeding "the tract laid out and lotted out as the Village of Grand Lake Stream" was disclaimed.   What happened to the case after the disclaimer was filed is not shown.

The parties disagree as to whether this is admissible on behalf of the defendant as an admission by Charles P. Webber.   If admissible its only apparent effect is that it in some measure supports the defendant's theory that the Webber mortgages were unauthorized, or if authorized were paid and satisfied.

But the disclaimer is not competent evidence to prove an admission by Webber.   While counsel in signing pleadings are presumed to be authorized so far as concerns the case in which such pleadings are filed, no such presumption exists when the pleadings are sought to be used by other persons in other actions.   *Dennie* v. *Williams,* 135 Mass., 28.   *Farr* v. *Rouillard,* 172 Mass., 303.

The defendant has shown title to the camp and lot by deed from the plaintiff Charles P. Webber.   As to the rest of the land involved the defendant has mere possession.   The plaintiffs having shown a title through (mortgage) deeds of grant containing covenants of warranty, are entitled to prevail.

Judgment must be rendered for the plaintiffs for the premises described in their writ excepting therefrom the camp now or heretofore occupied by the Tomah family, together with the land used with the camp and reasonably necessary to be used with it as a dwelling.

> *Judgment for plaintiffs as*
> *stated in the opinion.*
> *No damages.*