Argued September 1, affirmed December 31, 1970

HLOOKOFF et ux, *Respondents, v.* WAYNE L.
JOHNSON INVESTMENTS, INC., *Appellant.*

478 P2d 628

*Richard D. Curtis,* Eugene, argued the cause for
appellant. On the brief were Hansen, Curtis & Strick-
land, Eugene.

*Pierre L. Van Rysselberghe,* Eugene, argued the
cause for respondents. With him on the brief were
Bailey, Hoffman, Morris & Van Rysselberghe, Eugene.

Before O'CONNELL, Chief Justice, and DENECKE,
TONGUE and HOWELL, Justices.

HOWELL, J.

This is a suit for rescission of a written contract for the sale of a motel. Defendant appeals from a decree granting the rescission.

In 1962 the plaintiffs, by an assignment of a contract, acquired a buyer's interest in the motel. The seller's interest had also been assigned and was held by Mr. & Mrs. John Worobec. After some negotiations, the plaintiffs and the defendant, Johnson Investments Inc., executed an earnest money receipt whereby Johnson agreed to purchase the property for $200,000, payable $100 down, $29,900 at the time of the execution of a "deed, contract," and the balance was apparently to be paid in various monthly amounts.

At the time of the execution of the earnest money receipt, the plaintiffs owed the Worobecs approximately $111,000 on their contract to purchase the motel. Subsequent to the execution of the earnest money receipt, Johnson discovered from a preliminary title report that the property was also encumbered by a mortgage to State Finance Company in the amount of $49,000. Under the terms of the prior purchase and sale agreement, the Worobecs were obligated to pay the mortgage to State Finance Company.

The plaintiffs' contract with the Worobecs provided that plaintiffs were entitled to secure a deed to the property when the unpaid balance had been reduced to $90,000. In exchange for the deed, the plaintiffs were required to give the Worobecs a mortgage for the unpaid balance.

On May 15, 1968, the plaintiffs and Johnson entered into the written contract which is the subject of this suit. The Worobecs and State Finance Com-

pany were not parties to the contract. The contract stated that the plaintiffs, as sellers, acknowledged the receipt of the $29,900 down payment; that Johnson intended to construct apartments on the property and would need financing in order to do so; that the sellers would subordinate their interest when so requested by the purchasers. The contract also stated the $29,900 down payment "shall be used, if necessary, to clear the mortgage interest of State Finance Co., * * * or if necessary may be used to obtain the subordination agreement and conveyance of title from John and Shirley M. Worobec. Sellers further agree to execute all documents necessary to subordinate their interest as herein provided and place said documents in escrow at Eugene Escrow Service Inc., Eugene, Oregon."

The contract also provided that the plaintiffs would not receive any payments on the contract for the first year. The plaintiffs, however, were obligated to the Worobecs for the monthly payments due them under the Worobec-Hlookoff contract.

When Johnson sent the escrow service his check for $29,900, the down payment on the purchase from plaintiffs, he required the following conditions to be met before the check could be cashed:

"(1) Subordination from State Finance for construction.

"(2) Subordination from Woromec [sic] based on his agreement.

"(3) All funds to be passed through Worobec to State Finance (or their assignee) for Hlookoff.

"(4) That in the event that State Finance will not subordinate their interest, that this information be made available to Johnson Investments for their study and instructions.

"(5) Subordination to a new loan or loans for construction is Hlookoff's responsibility, however, Johnson Investments has agreed to help Hlookoff in this matter only in an advisory capacity and this does not relieve Hlookoff of his responsibility to make whatever arrangements are necessary to obtain subordination as per the agreement."

Apparently the plaintiffs did not receive a copy of the above escrow instructions. The plaintiffs first realized that they were not to receive any portion of the $29,900 down payment when they were so advised by the Worobecs. According to plaintiffs, they questioned Johnson concerning this subject, and Johnson stated: "Don't worry. I'm not going to use your money. We have some money."

Plaintiffs declined to surrender possession of the property, and this suit for rescission was filed. Plaintiffs alleged actionable fraud, innocent misrepresentation, impossibility of performance, and mutual mistake as grounds for the rescission. The defendant, in his answer, requested specific performance, or, in the alternative, damages for breach of the contract. The trial court found for plaintiffs on all four grounds. At the trial, Johnson abandoned the request for specific performance, which now leaves the case in the position where neither party desires to proceed with the purchase and sale of the motel.[1]

The evidence discloses no basis whatsoever for a finding of fraud or negligent misrepresentation by the defendant. It is true that the earnest money receipt recites that the down payment of $29,900 is to be paid on delivery of a "deed, contract" and that

---

[1] The Worobecs and the Eugene Escrow Service were named as defendants in plaintiffs' complaint but filed no appearance and are not involved in this appeal.

the contract provided for subordination of the down payment in favor of Worobecs' interest, or the interest of State Finance Company. However, it is obvious from the earnest money receipt, on a printed form, that it was merely a preliminary agreement and that a formal contract was contemplated. Moreover, plaintiffs admitted that the subordination of the down payment was discussed prior to the execution of the final contract.

However, the evidence discloses that the parties were mistaken in their expression of assent to the terms of the contract. There was no meeting of the minds in any sense, no agreement in intention, and neither party was at fault. 3 Corbin on Contracts 592, § 599. *Reed et al v. Montgomery*, 180 Or 196, 175 P2d 986 (1947). "A meeting of the minds upon each and all essential elements is indispensable to the creation of a contractual relationship." *Kretz et ux v. Howard et al*, 220 Or 73, 83, 346 P2d 93 (1960).

The defendant needed a construction loan which required him to give a first mortgage as security. The plaintiffs owed Worobecs approximately $111,000 and could not receive a deed until the balance was reduced to $90,000. State Finance Company held a mortgage for $49,000 against the property. The down payment was insufficient to satisfy the liens of State Finance Company and the Worobecs. If the $29,900 down payment was paid to the Worobecs, plaintiffs would be entitled to a deed to the property but would have to give the Worobecs a mortgage for $90,000 in return. If the down payment was paid to the Worobecs, and by them paid to State Finance Company, it would still be insufficient to satisfy the State Finance mortgage.

At one time Johnson testified that he expected plaintiffs to make up the deficit. However, Worobecs, not plaintiffs, were obligated on the note to State Finance Company. At another time Johnson testified:

"Q Now, as you recall, what was to have happened in the event the subordination that you wanted Mr. Hlookoff to get could not be obtained?

"A *I don't think we analyzed it that far, other than to the extent that we might have to secure further financing ourselves to handle this transaction; and frankly that might be an additional $20,000.*

"In other words, looking on the worse side, we analyzed there would be a possible $20,000 more. It was a temporal position, and that temporal position was the difference between $114,000 and the 95,000 of Mr. Worobec's.

"Q You thought about this possibility at the time you entered into the contract?

"A Yes. I can't say—when we make negotiations of this nature, we're always concerned with whether the other party can perform. We go into detail about subordination and everything so we know they understand exactly—at least to the best of our ability—what subordination means.

"Q Who formulated the idea that the Hlookoffs would substitute a mortgage for their contract and then give the Worobecs a note and a pledge agreement to substitute for their contract?

"A *I think that this was a tough negotiation to unravel because it involved so many different people and so many unknowns, and Mr. Curtis was asked to see if he could untangle it and make it a proper sequence that could be understood by myself and Mr. Hlookoff; and I assume that it was probably his suggestion that came up with the method.*

"Q So it's your recollection that your lawyer

then arrived at this as a means by which this all could be accomplished?

"A Yes." (Emphasis supplied.)

We conclude that the parties were mutually mistaken as to how the prior liens of State Finance Company and the Worobecs were to be paid or by whom, and did not have a meeting of the minds on the subordination provisions in the contract.

The trial court properly granted rescission. The decree is affirmed.