Roger OUELLETTE et al.

v.

Joseph BOLDUC et al.

Supreme Judicial Court of Maine.

Argued Sept. 18, 1981.

Decided Feb. 9, 1982.

L. James Lavertu (orally), Madawaski, for plaintiff.

Solman, Page & Hunter, P. A., Robert H. Page, E. Allen Hunter (orally), Caribou, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

The plaintiffs, Roger and Norma Ouellette, filed their complaint against the defendants, Joseph and Mary Bolduc, in Superior Court, Aroostook County, on December 4, 1979, seeking alternative relief, (1) specific performance of the written contract of purchase and sale of real estate between the parties dated October 3, 1978, or, in lieu thereof, money damages, and (2) the recovery of monetary damages, compensatory and exemplary, for breach of the reference contract. At the close of the plaintiffs' evidence before the jury, the defendants made a motion for a directed verdict pursuant to Rule 50(a), M.R.Civ.P., on several grounds. The court granted the motion on the stated conclusion that there was no meeting of the minds between the parties and, therefore, no enforceable contract. The plaintiffs appeal from the resulting judgment in favor of the defendants. We deny the appeal and affirm the judgment.

### Facts

Viewing the evidence, as we must, in the light most favorable to the plaintiffs as the parties against whom the verdict was directed (*Emerson v. Ham*, Me., 411 A.2d 687, 689 (1980)), we find the following facts upon which the presiding justice rested his decision to be conclusively and unequivocally established. In June, 1978, one Angelo Morneault, a Bangor realtor, had been hired by the Bolducs to find a buyer for their Fort Kent and Eagle Lake apartment buildings. At the time of the listing of the properties with the broker, Mr. Bolduc mentioned the fact that he owned a parcel of land across the road from his Eagle Lake apartment building, but that the land across the road was not to be included in the sale. Following some two to three weeks of negotiations with Morneault, the Ouellettes, on October 1, 1978, signed a written contract offering to purchase the Bolduc properties described as follows:

"Apartment Building on Cannan St., Fort Kent Me. and the apartment building at Eagle Lake Maine,"

for

"Total Price both in a package $500,000.00."

The financing terms were set out in the offer. The contract was a form contract which the broker filled in respecting all the details of the transaction, the Ouellettes' only addendum put in at their request being the clause

"Provided that the state [Maine Housing Authority—holder of the 1st mortgage] accepts the buyer."

On October 3, 1978, the Bolducs signed the contract, agreeing to give a good and marketable title by deed to the property, provided that the investigation of the buyer on character and reputation to pay is acceptable. The Ouellettes had relied on Morneault's representations concerning the rentals and incidental expenses involved in the operation of the two apartment building properties. They had not inspected the premises in Eagle Lake, and at no time during the negotiations or at the time of the signing of the agreement was there any mention of the land to go with the respective buildings. Mr. Ouellette at the time was in the real estate business in Fort Kent, owning and renting apartments in that town. In early November, it came to light for the first time that the drainage or leach field servicing the Eagle Lake apartment building was located on the parcel of land across the road from the building, i.e. on the parcel which the Bolducs at the listing had expressly indicated was to be excluded from the sale. Once aware of the situation, the Ouellettes refused to agree to buy the "excluded parcel" for an additional sum of $5000.00 which the Bolducs were then asking for that piece of land and refused to buy the apartment buildings without the drainage area parcel. The sequel to the break-down of negotiations took place when the plaintiffs filed their complaint on December 4, 1979.

*Law*

■ Initially, it is evident that, absent intervening public or private rights, an owner of land may carve out and sell any portion that he pleases and the terms of his deed as justly and legally construed will regulate and measure the rights of the grantee. He may sell a house without an easement, if that be the intention of the parties. *See Warren v. Blake,* 54 Me. 276 (1866). The same rule would apply to a contract for the sale and purchase of land.

It is essential to the formation of a valid and enforceable contract that there be a meeting of the minds of the parties to the contract, *i.e.* a mutual assent to be bound by its terms as reflected and manifested therein either expressly or impliedly. *Zamore v. Whitten,* Me., 395 A.2d 435, 440 (1978).

■ As in the case of other contracts, in any agreement between a prospective vendor and purchaser of lands the offer and acceptance must be concurrent in understanding; there must be mutual manifestations of assent or a meeting of the minds of the parties respecting all material terms and provisions of the contract, including the identity of the real property which is to be the subject matter of the transaction. In other words, the parties must agree to the same thing in the same sense. *Evarts v. Forte,* 135 Vt. 306, 376 A.2d 766 (1977); *Hlookoff v. Wayne L. Johnson Investments, Inc.,* 257 Or. 305, 478 P.2d 628 (1970); *McGeorge v. White,* 295 Ky. 367, 174 S.W.2d 532 (1943).

■ We note that the contract executed by the parties did not describe the land to be conveyed by metes and bounds. It spoke solely in terms of the purchase and sale of the apartment buildings, property of Joseph and Mary Bolduc, situated respectively in Fort Kent and Eagle Lake, Maine. The failure of the parties to delineate in the contract or otherwise indicate with some specificity the land which they intended to buy and sell with the apartment buildings did not in and of itself render the contract unenforceable. As a conveyance in the form of the deed of a house, barn, mill, cottage or wharf will, unless otherwise apparent, pass by implication and comprehend the land under the structure and the land adjacent thereto so far as necessary to its use and commonly used with it,[1] so also will a contract for the purchase and sale of such structures, including apartment buildings as in this case, comprise and reach the land under them and what adjacent land is necessary to their use and is commonly used with them.

■ In the instant case, the plaintiffs claim that the contract of purchase and sale of the Eagle Lake apartment building included as a matter of law the lot of land on the other side of the road across from the apartment building. We disagree. The plaintiffs presented no evidence whatsoever respecting the visible aspect of the land areas either adjacent to the apartment building or across the road. How much land is involved on either side of the road, the topography of the terrain, the relationship of one lot to the other on the surface of the earth, are all circumstances which the plaintiffs have left to speculation. The plaintiffs had the burden of proof to show their entitlement to relief either in equity or at law. *See Sanborn v. Hoyt,* 24 Me. 118 (1844).

In the instant case, the record as it stands disputes any claim that the lot across the road was an integral part of the piece of land on which the Eagle Lake apartment building was situated. The two lots were not shown to form a solid tract; on the contrary, without any evidence of the dimensions of the areas involved, nor of any visible use of the lot across the road in connection with the apartment building, the

1. This concept of the law is firmly established in Maine and Massachusetts. *See Blake v. Clark,* 6 Me. 436 (1830); *Derby v. Jones,* 27 Me. 357 (1847); *Moulton v. Trafton,* 64 Me. 218 (1874); *Cunningham v. Webb,* 69 Me. 92 (1879); *Webber v. Austin,* 123 Me. 95, 121 A. 673 (1923). *Wooley v. The Inhabitants of Groton,* 2 Cush. 305 (Mass.1848); *Greenwood v. Murdock,* 9 Gray 20, 69 Am.Dec. 272 (1857); *Scanlan v. Geddes,* 112 Mass. 15 (1873); *Harvey v. Inhabitants of Town of Sandwich,* 256 Mass. 379, 152 N.E. 625 (1926).

parcels, separated by the road, had to be treated as separate lots. *See Fickett v. Hohlfeld*, Me., 390 A.2d 469 (1978). *Cf. Board of Environmental Protection v. Bergeron*, Me., 434 A.2d 25 (1981); *City of Augusta v. Allen*, Me., 438 A.2d 472 (1981).

The plaintiffs cannot claim, by virtue of the contract, the right to a conveyance of the lot across the way as being appurtenant to the land upon which the apartment building stands. As stated in *Warren v. Blake*, 54 Me. 276, at 284 (1866), it is familiar law that land cannot pass as appurtenant to land, although an easement may.

Nor, could the plaintiffs claim, by virtue of the contract, the right to the conveyance of the piece of land on which the apartment building is located, together with the grant of an easement in and to the parcel across the road to maintain the leach or drainage area as presently used in the operation of the apartment building. Easements will not be implied in the construction of deeds, or contracts for the purchase and sale of lands, unless the easement be one of strict necessity. Mere convenience, however great, will not suffice. And the test of necessity is whether the party claiming the easement can at reasonable cost on his own estate create a substitute. *York v. Golder*, 128 Me. 252, 147 A. 41 (1929); *Watson v. French*, 112 Me. 371, 92 A. 290 (1914).

The plaintiffs had the burden of proof to show that the drainage area within the parcel across the road was strictly necessary in the operation of the apartment building on the other side of the way and that no substitute leach bed was available upon the land adjacent to the building at reasonable cost. This, the plaintiffs failed to do.

Thus, in the circumstances appearing of record, it is evident that the parties executed the purchase and sale agreement under a mutual mistake respecting a material and substantial element of the subject matter of the contract, the plaintiff-buyers believing they were purchasing an apartment building fully equipped with sewer facilities including incidental leach bed, while the defendant-sellers intended to sell the apartment building to the exclusion of the lot across the road where the drainage area was located. The plaintiffs failed to carry the burden of proof, which was cast upon them as plaintiffs in the action, that there was a meeting of the minds of the parties respecting the very subject matter of the transaction. Under such circumstances, the Ouellettes were not entitled to any relief, either in equity or at law, and the justice below correctly granted the defendants' motion for a directed verdict in their favor.

We do recognize that under certain circumstances a court of equity will determine with which party the equities are and may then shape its decree according to the equities of the case. *See Wiley v. Berg*, 282 Or. 9, 578 P.2d 384, 391 (1978); *Peaslee v. Pedco, Inc.*, Me., 414 A.2d 1206, 1208 (1980). In the instant case, the Ouellettes were insisting, in their claim for specific performance of the contract, that the defendants convey to them title to the lot across the road, and did not seek any conditional diluted decree of relief, either in their pleadings, at trial, or before us on appeal. Hence, we need not consider whether such relief, if properly requested, would be available.

Basic, however, to their right to compel the defendants to convey both the land underneath and adjacent to the Eagle Lake apartment building and the lot across the road, was proof of the existence of an enforceable contract; in a suit in equity for specific performance, the plaintiffs have the burden of showing a meeting of the minds of the parties to the contract. *See Dutch v. Scribner*, 151 Me. 354, 118 A.2d 887 (1955). *Pribil v. Ruther*, 200 Neb. 161, 262 N.W.2d 460 (1978).

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.