STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                    LOCATION: Caribou
                                                  Docket No. CARSC-RE-2021-012

GR TIMBER HOLDINGS, LLC            )
                                   )
                Plaintiff          )
                                   )
v.                                 )              JUDGMENT
                                   )
STEVEN PACKARD                     )
And                                )
RONDA PACKARD                      )
                                   )
                Defendants         )

Currently pending is Plaintiff's Complaint for (1) Reformation, and (2) Rescission. A bench trial was conducted in Caribou on May 31, 2022. Plaintiff was present, represented by Richard Solman, Esq. Defendants were present, represented by John Tebbetts, Esq. The court received Plaintiff's exhibits 1 through 10 and 12 through 16, without objection. The court also received Defendant's exhibit 1, without objection. The court received testimony from Gabriel Rioux, Frederick Dobbs, Leigh Smith, Dale Blackstone, Steven Packard, and Ronda Packard. After hearing and based upon the evidence presented, the court makes the following findings of fact, conclusions of law, and resulting judgment:

## Background

Plaintiff is a real estate company engaged in the business of buying, selling, and managing real estate. The sole member of the LLC is Gabriel Rioux. Plaintiff purchased a certain parcel of real estate from the Estate of Vayne Bither as described in the Personal Representative's Deed of Sale dated July 22, 2019 and recorded at the Southern Aroostook

County Registry of Deeds at Book 5915, Page 89 (hereinafter referred to as "the Bither Property"). *Plaintiff's Ex. 4.* The Bither Property consisted of approximately 40 acres, a residential structure, a shop, a machine shed, and a salt-box shed as well as a barn. The Bither Property was at one time two separate parcels identified as 16 Jemtland Road in New Sweden (house/shop/machine shed/shed) and 10 Jemtland Road in New Sweden (an existing barn and a house that has long since been torn down).

Plaintiff intended to divide and sell the Bither Property in an attempt to turn a profit from the purchase. Plaintiff intended to create a separate lot on the westerly side of the Bither Property that consisted of the barn and acreage (hereinafter "the Barn Parcel"). The Barn Parcel also had a well and septic related to the house formerly situated on the property. The remaining property consisting of the house/shop/machine shed/shed and approximately 27 acres was to be marketed separately (hereinafter "the Farm Parcel"). Plaintiff entered into a listing agreement with a local real estate company by the name of Bernard-Coury Realty to market the properties. Plaintiff made clear to Bernard-Coury Realty that the properties would be marketed as two separate parcels and Plaintiff provided a Google Earth overlay map of the property showing the proposed properly lines. In addition, Plaintiff installed 2 inch pipes, painted blue, with approximately 3 feet of the pipe above ground at the 5 property line points of the Farm Parcel as depicted on Plaintiff's Exhibit 3. A copy of Exhibit 3 was provided to Bernard-Coury along with a copy of the deed of the property to Plaintiff. *Plaintiff's Ex. 4.*

On July 17, 2020, Plaintiff entered into a Land Installment Contract with Mary Jennings-Brown and Eric Brown, both of Branson West, Missouri, for the Barn Parcel.

Plaintiff did not record a memorandum of the Land Installment Contract until April 2, 2021. *Defendant's Ex. 1; 33 M.R.S. §482(2).* The Land Installment Contract included a legal description for a portion of the Bither Property.

In September of 2020, Plaintiff made the decision to transfer the listing of the Farm Parcel to another real estate company. Plaintiff listed the Farm Parcel with Dobbs Realty. The owner of Dobbs Realty was Frederick Dobbs and Mr. Dobbs did all of the work of Dobbs Realty related to the matter at issue herein. Plaintiff explained to Mr. Dobbs the description of the property, including the proposed 27 acres to be included with the buildings. Plaintiff also informed Mr. Dobbs that the Barn Parcel was not included in the listing. Mr. Dobbs obtained all of the material and information provided to Bernard-Coury Realty by Plaintiff directly from Bernard-Coury Realty. Mr. Dobbs also visited the property and easily located the blue boundary posts, with the exception of the post at the northeast corner of the Farm Parcel.

Mr. Dobbs uploaded the information related to the Farm Parcel to the multiple listing service (hereinafter referred to as "MLS") website for real estate. Plaintiff's Exhibit 1 is a copy of the Public Detail Report that was available to all prospective buyers for the property (hereinafter referred to as "the MLS data sheet"). The MLS data sheet made clear that the Farm Parcel consisted of 27 acres +/- and was only a part of the property described in the Plaintiff's source deed recorded at Book 5915, Page 89. In addition, Mr. Dobbs uploaded 58 photographs that he took of the property to be included in the marketing material. *Plaintiff's Ex. 7.* Once all this information was uploaded to the site,

other listing sites would be able to pick it up and further distribute the information by way of their respective websites such as Zillow.com or Redfin.com.

While Mr. Dobbs was engaged in activities for Plaintiff, Leigh Smith of Remax County (hereinafter "Mr. Smith") was engaged in activities as the agent of the Defendants relative to their search for a suitable home in Maine. *Plaintiff's Ex. 6.* Within a few days of Mr. Dobbs uploading the information related to the Farm Parcel to the MLS, he was contacted by Mr. Smith as agent of the Defendants with an inquiry regarding the Farm Parcel. Mr. Dobbs met Mr. Smith at the property and showed him the general boundaries of the Farm Parcel and specifically noted that the Barn Parcel was not included in the Farm Parcel for sale.

The Defendants reviewed all the material associated with the MLS data sheet and consulted with Mr. Smith. The Defendants decided to make an offer on the Farm Parcel of $135,000. As of the time of the offer, the information made clear that the sale involved a portion of the property described in Plaintiff's source deed recorded at Book 5915, Page 89 and consisted of 27 acres +/- and the buildings depicted in the photographs set forth in Plaintiff's Exhibit 7. The contention that the portion of the barn visible in the background of the photograph created confusion as to whether the barn was included with the Farm Parcel was simply not credible. The evidence made clear that the sale *did not* include the barn or the Barn Parcel.

Mr. Smith drafted an offer on the standard purchase and sale contract commonly used by realtors in Maine. In preparing the contract, he mistakenly checked the "all" box in paragraph 2, instead of the "part of" box where it relates to the referenced deed that is

the seller's source of title. *See, Plaintiff's Ex. 2.* In addition, Mr. Smith mistakenly included a Registry of Deeds Book reference that was incorrect by stating Book 5919, instead of Book 5915. *Id. and Plaintiff's Exhibit 1.* No one noticed these errors from either the Defendants' side or the Plaintiff's side.

Plaintiff rejected the offer of $135,000 and submitted a counteroffer at $138,000 through Mr. Dobbs. Again, the errors listed in the preceding paragraph were not picked up by Mr. Smith, Defendants, Plaintiff, or Mr. Dobbs. The counteroffer was accepted, and the parties were under contract for the sale of the Farm Parcel. As of the time of the contract, both parties were operating under a mutual mistake as to the deed reference and the legal description of the property to be conveyed as set forth in the contract.

After they were under contract, the Defendants requested more information regarding the property. As they were in Colorado and busy attending to the sale of their home there, they enlisted the help of individuals in Maine to provide that information. Smith provided a video wherein he panned by the barn with the camera and stated that the barn was not included, he did not believe. *See, Plaintiff's Ex. 12.* The Defendants further requested a "plat map" or property "outlined on Google Earth." *See, Plaintiff's Ex. 9.* In response, the Defendants were provided with a copy of the Google Earth depiction of the Farm Parcel with red lines shown as the westerly, northerly and easterly boundaries. *See, Plaintiff's Ex. 3.* The depiction further indicated that it was a "27 acre" parcel and identified a small gravel pit and pond that were part of the Farm Parcel. *Id.* What was clearly not part of the Farm Parcel was the barn and the lot to the west of the Farm Parcel on the Google Earth depiction. *Id.* After receiving the Google Earth

depiction, the Defendants had no questions about the boundaries of the Farm Parcel for the realtor or anyone else.

In addition, the Defendants had an inspection performed on the Farm Parcel and buildings situated thereon. *See, Plaintiff's Ex. 8.* The barn was not inspected, and the inspector indicated that he or she was unsure as to whether it was included. *Id.* As to the parties to the transaction and both of the realtors, it was clear that the barn and Barn Parcel were not included in the transaction. Therefore, there would be no need to have the barn included in the inspection.

The parties proceeded to close the transaction without the Defendants ever having traveled to the property after they were under contract. The attorney for Plaintiff was not aware of the mutual mistake as set forth in the contract and he proceeded to prepare the deed as called for by the contract (apparently discovering only the error regarding the Book reference). Again, no one discovered the error regarding the legal description and the matter closed with the delivery of the deed and the payment of the purchase price.[1]

In early December of 2020, Mr. Packard reached out to Plaintiff to introduce himself and inquire as to who bought the Barn Parcel from Plaintiff. As part of that conversation, Mr. Rioux offered to meet with Defendants and walk the lines of the Farm Parcel once the snow was gone.

It was not until later in December of 2020 when the utility company was attempting to install power to the barn that it was uncovered that the deed of conveyance

---

[1] The purchase price was ultimately renegotiated back to $135,000 after discussions that followed the receipt of the inspection report.

to the Defendants included *all* of the property that Plaintiff received from the Bither Estate. The parties were unable to resolve the issue related to the legal description amongst themselves. This action followed those efforts.

## Discussion - Reformation

In Count 1, Plaintiff is seeking the reformation of the Purchase and Sale Contract and the Deed so as to correctly describe the premises intended by the parties to be conveyed. "A party seeking to reform a deed must demonstrate mutual mistake of fact by clear and convincing evidence. *Strout v. Gammon*, 629 A.2d 43, 46 (Me. 1993). 'A mutual mistake is one reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument.' *Bryan v. Breyer*, 665 A.2d 1020, 1022 (Me. 1995) (quotation marks omitted)." *Baillargeon v. Estate of Daigle*, 2010 ME 127, P16, 8 A.3d 709, 714.

Plaintiff has shown by clear and convincing evidence that the parties intended to effectuate the transfer of a portion of the property described in Plaintiff's source deed that consisted of the house, shop, and two smaller sheds and approximately 27 acres of property as depicted on Plaintiff's Ex. 3. All the marketing material made that clear. The drafter of the contract credibly testified that he made a mistake in drafting the contract. As the agent of the Defendants, Smith's error and mistake is an error and mistake of Defendants. *See, Warner v. Maine C. R. Co.*, 111 Me. 149, 153, 88 A. 403, 405(*Quoting, Packet Company v. Clough*, 87 U.S. 528 (1874)("It is true that whatever the agent does in the lawful prosecution of the business entrusted to him, is the act of the principal"). The mutual mistake was not discovered as of the time of the closing and the transaction was closed

with both parties operating under the belief that the conveyance involved a portion of the property described in Plaintiff's source deed that consisted of the house, shop, and two smaller sheds and approximately 27 acres of property as depicted on Plaintiff's Ex. 3. *Compare, Bryan v. Breyer*, 665 A.2d 1020, 1022 (Me. 1995)(Parties discovered the mistake before closing and proceeded to close anyway. Because there was no real misunderstanding about the effect of the deed *as of the time of its delivery*, the remedy of reformation was improperly granted by the trial court).

The contention that the Defendants were laboring under the belief that they were purchasing the Barn Parcel or the barn as part of this transaction was not supported by any credible evidence at trial. The evidence clearly showed that all parties to the transaction understood it to include only the house, shop, and two smaller sheds and approximately 27 acres of property as depicted on Plaintiff's Ex. 3

## Discussion – Rescission

"[I]n any agreement between a prospective vendor and purchaser of lands the offer and acceptance must be concurrent in understanding; there must be mutual manifestations of assent or a meeting of the minds of the parties respecting all material terms and provisions of the contract, including the identity of the real property which is to be the subject matter of the transaction. In other words, the parties must agree to the same thing in the same sense. *Evarts v. Forte*, 135 Vt. 306, 376 A.2d 766 (1977); *Hlookoff v. Wayne L. Johnson Investments, Inc.*, 257 Or. 305, 478 P.2d 628 (1970); *McGeorge v. White*, 295 Ky. 367, 174 S.W.2d 532 (1943)." *Ouellette v. Bolduc*, 440 A.2d 1042, 1045 (Me. 1982). In the event there is not a meeting of the minds respecting all material terms and provisions

of the contract, a party may seek rescission to place the parties back in the position they were in prior to entering into the contract. *See, Di Biase v. Universal Design & Builders, Inc.,* 473 A.2d 875, 878 (Me. 1984)("Mutual mistake occurs when the minds of the parties fall prey to the same misconception with regard to the bargain.").

In this matter, there was no failure of a meeting of the minds. What did occur was a mistake in the paperwork. At both the time of the contract *and* the time of the closing, the parties had a mutual understanding that what was being conveyed was a portion of the property described in Plaintiff's source deed that consisted of the house, shop, and two smaller sheds and approximately 27 acres of property as depicted on Plaintiff's Ex. 3. Since there was a meeting of the minds, the Plaintiff has failed to show that it would be entitled to the equitable remedy of rescission.

**Judgment is hereby GRANTED in favor of Plaintiff on its complaint for reformation.** The court finds that the legal description for the Purchase and Sale Contract and the Deed of conveyance shall be reformed to except and reserve the following real estate from the conveyance set forth in the Warranty Deed recorded at the Southern Aroostook County Registry of Deeds in Book 6082, Page 46:

"Excepting and reserving the following described real estate:

Commencing at a point which marks the northwest corner of Original Lot 8;

Thence in a southerly direction along the west line of Original Lot 8 to a point which marks the intersection of the west line of Original Lot 8 and the northerly limit of the Jemtland Road, f/k/a the Station Road;

Thence southerly and southeasterly along the northerly limits of the Jemtland Road to an iron pipe, said iron pipe being one thousand (1,000) feet, more or less, westerly of the southeast corner of the land of G.R. Timber

Holdings, LLC, as described in the Deed of Sale from the Estate of Vayne V. Bither recorded at the Southern Aroostook County Registry of Deeds at Book 5915, Page 89;

Thence in a northeasterly direction across said land of G.R. Timber Holdings, LLC a distance of one hundred ninety-three (193) feet to an iron pipe;

Thence in a northerly direction a distance of one thousand one hundred twelve (1,112) feet, more or less, to an iron pipe located on the north line of Original Lot 8, said iron pipe being three hundred fifteen (315) feet east of the northwest corner of Original Lot 8;

Thence in a westerly direction along the north line of Original Lot 8 a distance of three hundred fifteen (315) feet to the northwest corner of Original Lot 8, which is the place of beginning of this parcel herein excepted."

Plaintiff shall be responsible for recording the attached abstract of this Judgment, in the appropriate Registry or Registries of Deeds and shall pay all costs and expenses that are necessary to comply with this provision.

**Judgment is hereby GRANTED in favor of Defendants on Plaintiff's complaint for rescission.**

Costs are awarded to Plaintiff.

The Clerk is directed to enter this Judgment on the Docket by notation, incorporating it by reference.

Dated: 6/7/2022

_____
Justice, Maine Superior Court

ENTERED ON THE DOCKET 6-7-2022